Raymond J. DONOVAN, Secretary of
the United States Department
of Labor

v.

John T. PORTER, et al.

Civ. No. Y–83–1516.

United States District Court,
D. Maryland.

March 30, 1984.

Virginia C. Smith, Washington, D.C., and Peter D. Ward, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

William G. Duvall, Salisbury, Md., for defendant John T. Porter.

Gary A. Goldstein, Baltimore, Md., for defendant David H. Clark.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This case involves an action brought by Raymond J. Donovan, Secretary of the Department of Labor, pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* Plaintiff in his initial complaint alleged that defendants John T. Porter and David H. Clark, acting as fiduciaries to the Bay Steel Products Corporation Profit Sharing Plan ("Plan"), breached their duties to the Plan by causing the Plan to make an unsecured loan of $18,132.10 to Modu Crete Corporation, an alleged party in interest with respect to the Plan. In making this loan to an interested party, a corporation that subsequently entered bankruptcy proceedings and failed to repay the loan, the defendants allegedly violated § 404(a)(1)(A) & (B), § 406(a)(1)(B) & (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A) & (B), § 1106(a)(1)(B) & (D). The complicated facts of the case will be discussed prior to any consideration of motions.

This seemingly simple case involving two defendants is made complicated by the corporate settings in which they operated. Three corporations are involved: Bay Steel Products Corporation of Delaware, a steel fabrication business and the company responsible for establishing the Plan which is the subject of the litigation; Bay Steel Products Corporation of Maryland, a holding company established by defendant Clark for the purpose of purchasing 100% ownership of Bay Steel of Delaware; and Modu Crete Corporation, a construction

company in which Bay Steel of Maryland held a 51% interest.

The defendants Clark and Porter are involved with all three corporations. That involvement began in 1977 when Clark purchased Bay Steel of Delaware in the following transactions: Clark had his accountants establish Bay Steel of Maryland for tax purposes to facilitate his purchase of 100% of the shares of Bay Steel of Delaware. (Clark dep. p. 10). Bay Steel of Delaware was then sold to Bay Steel of Maryland in April of 1977. (Stip. fact). Clark owned 100% of the shares of Bay Steel of Maryland (Clark dep. p. 19) and thus owned 100% of Bay Steel of Delaware. On September 1, 1977, Bay Steel of Maryland bought 51% of Modu Crete, making Clark majority owner of that corporation. (Clark dep. p. 23) Ownership was slightly simplified in November, 1978, when Bay Steel of Delaware merged into Bay Steel of Maryland. (Clark dep. p. 24).

Defendant Porter's involvement with the corporations began concurrently with Clark's. Clark hired Porter to "run everything." (Clark dep. p. 29, Porter dep. p. 7). Clark and Porter were the top men in the operations of the two operating companies, Bay Steel of Delaware and Modu Crete and Porter functioned as general manager of both companies. His official position is unclear, as various documents list him as Vice President of Bay Steel of Delaware and President or Vice President of Modu Crete. (Porter dep. 24–27). He was, however, responsible for the day-to-day operations of both companies. (Clark dep. pp. 29, 37). Clark, as the owner of both companies, had final authority but left the management to Porter.

Clark, Porter, and Clark's wife are listed as directors of both Bay Steel of Delaware and Modu Crete on Delaware state tax forms. It seems clear, however, that there never were formal meetings of the boards of directors, and major decisions were made after consultation between Porter and Clark. (Porter dep. passim).

The relationship between the two operating companies, though not a formal one, was close. They were physically adjacent and Bay Steel provided services for Modu Crete such as accounting and payroll. Modu Crete used the office of Bay Steel for administration. (Porter dep. pp. 42–43).

The Plan which gave rise to this litigation was established by the prior owners of Bay Steel of Delaware for employee pensions. Clark and Porter became aware of the existence of the Plan shortly after Clark assumed ownership of Bay Steel when the prior owner, Ed Bounds, sought to withdraw his contributions to the Plan. (Clark dep. p. 28, Porter dep. pp. 55–58). While Porter and Clark knew that Bounds was trying to withdraw money from the Plan, both deny any real involvement in that transaction. Sometime following the Bounds transaction, Clark's accountant, Charles Habliston, prepared documentation designed to insure that the Plan was in full compliance with ERISA. The documents were never executed because the completed forms, sent to Bay Steel, were never returned by John Porter, and because Bay Steel had not paid the accounting fees on a timely basis. (Dep. of Habliston, pp. 68–76). Despite the failure of the firm to follow through, the Plan was still covered by ERISA. (Habliston dep. pp. 41–42).

Clark and Porter both deny any real knowledge of the nature of the Plan and of ERISA requirements. Neither is a contributor to the Plan. Porter's signature is on ERISA reporting forms 5500C as Plan administrator, beginning with a form for the year 1975, allegedly signed so that Bounds could obtain his money. (Porter dep. p. 58). Porter also signed forms relating to the Plan in the course of his duties as general manager. (Porter dep. p. 63).

Whatever the extent of the defendants' knowledge of the Plan, they were made aware of its assets in August, 1978. At that time, a Certificate of Deposit consisting of the Plan's assets matured, and the Peninsula Bank contacted Porter for instructions. At that time, the transaction giving rise to this litigation occurred.

Modu Crete was experiencing financial problems in the summer of 1978 and had

chronic cash flow difficulties. When Porter was made aware of the assets of the Plan, he discussed with Clark the possibility of loaning them to Modu Crete. (Porter dep. p. 89). At this time, Modu Crete was bidding on a large construction job which, if it materialized, would solve its financial difficulties. (Porter dep. pp. 79–82).

Porter and Clark made the decision to loan the Plan money to Modu Crete. No other use of the money was discussed at this time. There was no perception that the loan to Modu Crete was improper. (Porter dep. pp. 87–89). Although Clark does not recall discussing the loan, Porter remembers that he discussed this transaction with Clark. *Id.* at 89.

The loan was accomplished by a check from Peninsula Bank to Bay Steel Products Profit Sharing Plan. The check was endorsed by Porter to Modu Crete Corporation and deposited in Modu Crete's account. *Id.* at 91–92. Porter also signed the loan document as President of Modu Crete. The unsecured loan was for two years with 10% simple interest and no payment until the loan was due. *Id.* at 99–102.

At the time the loan was made, no other investment possibilities for the Plan assets were discussed, nor was Porter aware that this constituted the sum total of the Plan's assets. *Id.* at 102, 109.

Modu Crete's big job never materialized, and the financial situation of the company deteriorated causing it to file for bankruptcy in October, 1979. (Stip. fact). No part of the loan was ever repaid.

Despite its small size and seeming inconsequence, the Plan is covered by the provisions of ERISA which was formulated to regulate, among other things, employee retirement plans. The purpose of ERISA is clearly stated in the language of the statute:

... owing to the lack of employee information and adequate safeguards concerning their [benefit plans] operation, it is desirable in the interests of the employees and their beneficiaries, and to provide for the general welfare ... that ... safeguards be provided with respect to the establishment, operation, and administration of such plans. 29 U.S.C. § 1001.

By its terms ERISA defines those in positions of authority in relation to plan assets, duty owed by such persons, and transactions they may not participate in. 29 U.S.C. § 1002(21) defines a fiduciary:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets....

29 U.S.C. § 1104 defines the duties of a fiduciary:

... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so....

Beyond this strict standard of care, ERISA defines certain prohibited transactions in 29 U.S.C. § 1106:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... lending of money or other extension of credit between a plan and a party in interest....

A fiduciary with respect to a plan shall not ... in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan....

Plaintiff, alleging that the defendants have violated the provisions of ERISA relating to fiduciary duties and prohibited

transactions has filed a motion for leave to file a first amended complaint, a motion for summary judgment, motions to compel answers to the first set of interrogatories propounded to defendant Porter and Clark and a motion to compel production of documents against defendant Clark.

Defendants have filed responses to the motions for amended complaint and summary judgment and Clark has filed a suggestion of stay due to his involvement in bankruptcy proceedings.

SUGGESTION OF STAY

Clark responded to plaintiff's motion for summary judgment with a suggestion that the proceedings be stayed because he filed a bankruptcy proceeding in the United States Bankruptcy Court for the District of Maryland, case 79–2–1831–L.

Clark initially filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 9, 1979. On September 17, 1981, the proceeding was converted by the debtors to a proceeding under Chapter 7. A hearing has been scheduled for April 6, 1984.

11 U.S.C. § 362(a) provides that a petition filed under the Bankruptcy Code operates as a stay, applicable to all entities, of the commencement of a judicial proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy proceeding. 11 U.S.C. § 362(b)(4). There are, however, exceptions to the automatic stay provisions. The filing of a petition does not operate as a stay of the commencement or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. 11 U.S.C. § 362(b)(4).

The purpose of the exceptions to an automatic stay, is among others, to prevent the proceedings of Bankruptcy Courts from impeding governmental exercise of police and regulatory powers. The legislative history of the exception explains what governmental actions are excepted, and what enforcement action can occur despite a bankruptcy proceeding:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. 1978 U.S.Code Cong. and Adm.News, 5787, 6299.

Courts have allowed exceptions to the automatic stay provisions in a wide range of regulatory settings. *See Commodity Futures Trading and Incomco, Inc.*, 649 F.2d 128 (2nd Cir.1981) (complaint by Commodity Futures Trading Commission against a corporation and a named individual is exempt from stay); *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.1981) (enforcement of SEC-ordered injunctive relief and appointment of receiver are exempt from automatic stay); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir.1981) (NLRB hearing ordering reinstatement of two employees with back pay not subject to automatic stay).

Particularly pertinent to the instant case is *In Re Tauscher*, 7 B.R. 918 (Bkrtcy.E.D. Wis.1981), where the debtor was subject to an action by the Secretary of Labor involving allegations of violations of child labor laws. The action was found to be exempt from the automatic stay provision and the Secretary of Labor was allowed to fix penalties, up to and including the entry of a monetary judgment against the debtor.

Courts have distinguished actions of governmental agencies where the sole concern of the agency is to protect the agency's pecuniary interest in property and found those actions to be subject to the automatic stay. Such agency actions are

not an exercise of regulatory or police powers but simply an attempt to enforce a money judgment. *Matter of Penn Terra Ltd.,* 24 B.R. 427 (Bkrtcy.W.D.Pa.1982); *In re State of Missouri,* 7 B.R. 974 (D.C.E.D. Ark.1980). However, here, the government seeks only to enforce the provisions of ERISA and to assess a penalty for the violation of those provisions. This is clearly the type of regulatory action Congress had in mind when it developed the exceptions to the automatic stay provision. Accordingly, the defendant's suggestion of stay will be denied.

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

■ Plaintiff has moved for leave to amend his complaint. The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time he filed his original complaint. 6 Wright and Miller *Federal Practice and Procedure* § 1473 and cases cited p. 375. Leave to amend pleadings shall be freely given when justice so requires. F.R.Civ.P. 15(a). *Lanahan v. Kawasaki Motors Corp.,* 93 F.R.D. 397 (D.Md.1982). Courts normally grant leave to amend unless amendment would prejudice the rights of any other parties to the suit. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77; *Davis v. Piper Aircraft Corp.,* 615 F.2d 606 (4th Cir.1980).

■ The clearest cases for leave to amend are to correct an insufficient claim or defense and to amplify a previously alleged claim or defense. 3 Moore *Federal Practice* ¶ 15.08[3]. Here, plaintiff seeks to clarify one allegation and add two additional allegations, that defendants violated ERISA by engaging in self-dealing and by failing to diversify Plan investments. Both new allegations arise from the same transaction described in the original complaint and both fall within the same sections of ERISA that the original complaint alleged were violated, 29 U.S.C. § 1104 and § 1106.

The information on which the amended complaint is based is information which the defendants knew or should have known. *Corey v. Look,* 641 F.2d 32 (1st Cir.1981); *Bates v. Western Electric,* 420 F.Supp. 521 (E.D.Pa.1976).

Courts may deny leave to amend if the amendment would result in undue prejudice to the other party, is untimely, is not offered in good faith, or if other amendments have been granted. 3 Moore *Federal Practice,* ¶ 15.08[4] and cases cited n. 8–11. The sole grounds for Porter's opposition to plaintiff's motion is that the motion is untimely since it could have been made following completion of depositions; moreover, the impending trial date would propose a hardship. Because the trial date has now been postponed, this hardship will be alleviated. Accordingly, plaintiff's motion for leave to amend his complaint will be granted.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff has moved for summary judgment on the grounds that there are no genuine issues of fact. Defendant Porter opposes the motion alleging genuine issues of fact and that plaintiff bases the motion on evidence which should not be considered, namely, admissions deemed admitted because of defendant's failure to respond in a timely fashion to requests for admission. Defendant Clark has responded to the motion with a suggestion of stay.

■ Plaintiff's motion for summary judgment rests on facts drawn from depositions, documentary evidence including ERISA reporting forms, tax forms, a promissory note, financial reports, articles in incorporation and merger. (*See* Porter proposed pre-trial order, pp. 9–11). Plaintiff's use of unanswered requests for admissions as facts, deemed admitted for the purposes of summary judgment, is the source of some controversy. Porter's opposition to the motion is based on the assertion that there are facts in issue, and more particularly that facts deemed admitted because of untimely responses to requests for admission ought not be the basis of a summary judgment motion. It is clear that unanswered re-

quests for admissions may properly serve as a basis for summary judgment and with a failure to make a timely response, the truth of the matter contained in the request for admission is conclusively established and may serve as the basis for a court's consideration of a motion for summary judgment. *Bateson v. Porter*, 154 F.2d 566 (4th Cir.1946); *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667 and cases cited (N.D.W.Va.1975). It is, however, within the court's discretion to allow untimely answers to requests for admissions, when such an amendment of the admission will not prejudice the other party. *Warren v. International Brotherhood of Teamsters*, 544 F.2d 334 (8th Cir.1976); *French v. United States*, 416 F.2d 1149, 1152 and cases cited (9th Cir.1969). Courts are particularly responsive to allowing late answers to requests for admission when summary judgment is involved. *St. Regis Paper Co. v. Upgrade Corp.*, 86 F.R.D. 355 (W.D.Mich.1980). It does not further the interests of justice to automatically determine the issues of a lawsuit and enter summary judgment against a party because a deadline is missed. *Hadra v. Herman Blum Consulting Engineers*, 74 F.R.D. 113 (N.D.Tex.1977).

Defendants did file responses to the plaintiff's requests for admissions, albeit in an untimely fashion. Requests for admissions were filed on November 28, 1983, and Porter filed on January 30, 1984. Clark filed his response on January 27, 1984. In this case, the plaintiff will suffer no prejudice if late answers are allowed, and the filing will be permitted. Hence, facts which were deemed admitted because of the untimely responses may not form the basis of plaintiff's summary judgment motion, unless such facts are not controverted.

Plaintiff's motion, however, rests in large part on facts gleaned from defendants' depositions, from the deposition of Charles Halbiston, Clark's accountant, and on documentary evidence. Plaintiff has, thus, complied with Rule 56(e) and gone beyond the pleadings to support his allegation that there are no issues of fact. Defendant Porter's opposition rests on an unsupported assertion that there are issues of fact, and a supporting memorandum that simply argues against the use of the above facts deemed admitted. Clark's answer to the motion is the suggestion of stay.

Plaintiff has shown that the Bay Steel Products Corporation Profit Sharing Plan was an employee benefit plan subject to the coverage of ERISA (Halbiston dep. pp. 40–42), that the assets of the Plan were loaned *in toto* to Modu Crete Corp. (stip. fact), that 51% of the shares of Modu Crete were owned by defendant Clark (Clark dep. p. 23), that defendant Clark owned 100% of the shares of Bay Steel of Maryland (stip. fact), which, at the time the loan was made, had merged with the sponsor of the Plan, Bay Steel of Delaware (Clark dep. pp. 20, 24), and thus defendant Clark and the Plan sponsor were parties in interest with respect to Modu Crete, that at the time the loan was made to Modu Crete no other investment possibilities were considered for the Plan assets (Porter dep. pp. 89–90), that Modu Crete was experiencing financial difficulties when the loan was made (Porter dep. p. 82), and that Modu Crete filed for bankruptcy and never repaid any part of the loan. (Stip. fact). Further, plaintiff has established that Porter was an officer of both the Plan sponsor and the company to which the loan was made (Porter dep. pp. 21, 24), and that Clark was a director of the Plan sponsor and the company to which the loan was made (Clark dep. p. 39). Plaintiff has also shown that Porter authorized the loan of Plan assets by endorsing the check from the bank to Modu Crete, and authorizing the receipt of the loan by Modu Crete. (Porter dep. pp. 91–96). While plaintiff has not shown that either defendant was formally appointed to a position of Plan administrator or trustee, plaintiff has shown that Porter signed forms indicating that he was Plan administrator. (Porter dep. p. 93). Plaintiff has also shown that Clark was ultimately responsible for the operations of the Plan sponsor and Modu Crete (Porter dep. pp. 7, 47–48), and that Porter generally consulted with

Clark prior to making major decisions. (Porter dep. pp. 47–48). The response to these facts is Porter's unsupported allegation that there are unresolved issues of facts.

 When the evidentiary matter presented by the movant does not establish that there is an absence of genuine issues, a summary judgment motion must be denied even if no opposing evidentiary matter has been presented. This is necessarily so, because the movant would not have met his burden under Rule 56. *See* Advisory Committee notes to 1970 amendments. Even if there is no dispute about the basic facts, summary judgment is inappropriate if the parties disagree about the inferences which may reasonably be drawn from undisputed facts. *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139 (4th Cir.1979); *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979). In determining whether the moving party has met the burden of showing that he is entitled to a judgment as a matter of law, the evidence must be considered in a light most favorable to the party opposing the motion. *United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Charbonnages, supra*, at 414. If, in conducting that examination, inferences could be drawn that do not clearly support judgment as a matter of law, then summary judgment should not be granted. *Morrison, supra*, at 141; *Charbonnages, supra*, at 414.

 The factual evidence under consideration, when examined closely, supports the plaintiff's position on a number of issues, particularly the nature of the party to whom the loan was made, the imprudent nature of the transaction, and the relationship between the defendants and the party to whom the loan was made. However, the motion for summary judgment must be denied because the issue of Clark's and Porter's status as Plan administrators, fiduciaries, and trustees is unclear. It is true that Congress took a functional approach towards defining who, under ERISA, would be treated as a fiduciary. *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629 (W.D.

Wis.1979). As the legislative history of the Act indicates, "the definition includes persons who have authority and responsibility with respect to the matter in question regardless of their formal title." 1974 U.S. Code Cong. & Admin.News 4639, at 5103. In contrast, the term Plan Administrator is more formal, referring to those appointed to such positions. *See* 29 U.S.C. § 1002(16)(A). While it seems clear that Porter or Clark, or both, acted as a fiduciary in conducting the loan which resulted in the loss of Plan assets, the level of responsibility to be assigned to each defendant, and whether either or both should be considered fiduciaries, remain to be determined. It is not clear whether either or both should be considered trustees or Plan administrators under the terms of the statute.

Further, Clark has not responded to the motion for summary judgment, except for his suggestion of stay which the Court has denied.

## MOTION TO COMPEL ANSWERS TO FIRST SET OF INTERROGATORIES

Plaintiff has also moved to compel answers to the first set of interrogatories propounded to both defendants on November 28, 1983, and has moved for the award of costs, expenses and attorneys fees. Porter filed his answers on January 24, 1984, and declined to answer interrogatories No. 1, 2, 3, 8, 9, 11 and 12 on the grounds that each interrogatory was improper because it called for a legal conclusion. Similarly, Clark filed his answers on January 30, 1984, declining to answer interrogatories No. 1, 2, 3, 7, 8, 9 and 10 on the same grounds. Interrogatories No. 1 and 2 for both defendants are no longer at issue because they call for answers about venue and jurisdiction and both defendants have agreed to stipulate venue and jurisdiction.

Under Rule 33, Fed.R.Civ.P., a defendant may object to an interrogatory and give the grounds for his objection when he declines to answer it. The 1970 amendments to Rule 33 make it clear that an interrogatory is not necessarily objectionable because it involves an opinion or contention that re-

lates to the application of law to fact. Fed. R.Civ.P. 33(b). Inquiries which in some measure call for legal conclusions can be useful in sharpening the issues. *Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D., 3, 4 (D.Md.1967). In each interrogatory objected to, plaintiff is seeking to learn the facts on which defendants are basing certain contentions: *e.g.*, the facts on which the defendants base their contention that the loan was not made to a party in interest. While it is true that the challenged interrogatories involve the application of law to fact, that is a legitimate scope of discovery. 8 Wright & Miller, *Federal Practice and Procedure* § 2167 and cases cited n. 25. Further, defendants are inconsistent in their reluctance to answer interrogatories calling for legal conclusions. Porter responded to interrogatories 5, 6, and 7 which relates to his status as Plan administrator, fiduciary and trustee, all terms used in the ERISA statute, yet declines to respond to interrogatories 10 and 11. Each of these interrogatories calls for the application of ERISA to the facts of the case, yet Porter is willing to answer some questions but not others.

 Clark's responses contain a similar willingness to apply law to fact in responding to interrogatories 5 and 6, and unwillingness to do so for interrogatories 7 and 8 through 10. An evasive or incomplete answer is equivalent to a failure to answer. Fed.R.Civ.P. 37(a)(2), (3). Defendants have given incomplete answers to interrogatories and the basis for their refusal to answer the interrogatories is improper and the motion to compel will be granted.

### ORDER

In accordance with the statements in the Memorandum attached hereto, it is this 30th day of March, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant Clark's motion for stay BE, and the same IS, hereby DENIED;

2. That plaintiff's motion for leave to file first amended complaint BE, and the same IS, hereby GRANTED;

3. That plaintiff's motion for summary judgment BE, and the same IS, hereby DENIED, without prejudice to being renewed;

4. That plaintiff's motion to compel answers and to produce documents BE, and the same IS, hereby GRANTED; and defendants are directed to file responsive answers and produce requested documents within fourteen (14) days; and

5. That a copy of this Memorandum and Order be mailed to counsel for all parties.