**In the Matter of the Complaint of FISHERMAN'S WHARF FILLET, INC., as Owner of the F/V Triangle I, for Exoneration from or Limitation of Liability.**

No. 2:99CV747.

United States District Court,
E.D. Virginia.
Norfolk Division.

Nov. 17, 1999.

On Motion to Reconsider;
Discipline and Sanctions
Dec. 20, 1999.

## MEMORANDUM ORDER & OPINION

JACKSON, District Judge.

This matter is before the Court on Plaintiff's Motion for Summary Judgment filed on September 29, 1999.[1] No response to the Motion was received from

---

1. Plaintiff additionally has two other pending procedural motions, one Motion for Judgment on the Pleadings and one Motion for Dismissal for Failure to State a Claim. As the Court's granting of summary judgment is appropri-

ate, these two outstanding motions therefore are moot. The Court further notes that the Plaintiff has filed a Motion to Compel in this matter that similarly is mooted by this Memorandum Opinion & Order.

the Claimant and the time for such a filing has elapsed.[2] Accordingly, the matter is ripe for judicial review. For the reasons discussed *infra*, the Plaintiff's Motion for Summary Judgment is **GRANTED**.

### I. Factual Background

Plaintiff in this action is the owner of the vessel, F/V Triangle I, a scallop boat moored on November 15, 1997 in Hampton, Virginia, within the Eastern District of Virginia. On that date, the Claimant, Nancy S. Russell, apparently boarded the vessel and now claims injuries as a result of the "unsafe and unseaworthiness of the vessel a well as the careless and negligent conduct of the captain and crew of the vessel." Claimant's Answer at 3(sic). In her answer, the Claimant specifically claims that she was invited to visit with a member of the ship's crew and sustained injuries from a hatch cover. As a result of her injuries, Claimant answered the Plaintiff's complaint with a claim for four hundred twenty five thousand dollars ($425,-000.00). *See id.* Both the Plaintiff and Claimant agree that the Claimant was not a member of the crew of the Triangle I at the time of her injury. *See id.; see also* Plaintiff's Complaint at 1.

It should be noted that as of the date of this Order, the Claimant has consistently failed to respond to events in this case. In addition to the failure to file a response to this pending Motion for Summary Judgment, the Claimant further failed to file a responsive pleading to the Plaintiff's Motion for Judgment on the Pleadings, filed August 23, 1999,[3] and failed to respond to the Request for Admissions, despite having acknowledged receipt of the Request for Admissions before a Magistrate Judge at the Initial Pretrial Conference on September 9, 1999 and represented at that conference that responses would be forthcoming.[4]

### II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only "[i]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. "Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local*

---

**2.** Local Rule of Civil Procedure 7 requires that "[u]nless otherwise directed by the Court, the opposing party shall file a responsive brief and such supporting documents as appropriate, within eleven (11) days after service." The Court notes that a certificate of service is filed with the pending motion, signed by counsel for the Plaintiff. It is further noted that no request for extension of time have been filed with the Court by the Claimant.

**3.** *See id.*

**4.** Federal Rule of Civil Procedure 36 provides in part that:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree in writing, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

*Union 7107 v. Clinchfield Coal Co.,* 124 F.3d 639, 640 (4th Cir.1997).

In the present case, the Plaintiff relies extensively upon a factual basis established through the failure of the Claimant to respond to the Requests for Admissions propounded by the Plaintiff's counsel on August 20, 1999. A review of the record before the Court shows only that the Claimant did file a Claim and Answer on August 2, 1999. Pursuant to Federal Rule of Civil Procedure 36(a), the Court will deem the unanswered Request for Admissions true. *See Donovan v. Porter,* 584 F.Supp. 202, 207–08 (D.Md.1984); *see also Foxworth v. World Book Encyclopedia, Inc.,* 838 F.2d 466, 1988 WL 6814 (4th Cir.1988)(unpublished table decision)(holding that "[u]nder Fed.R.Civ.P. 36(a), the matters asserted in the [unanswered] request for admissions are deemed true.").

The failure of the Claimant to respond to this summary judgment motion leaves uncontroverted those facts relied upon by the motion, but the Plaintiff still bears the burden of showing that the uncontroverted facts entitle the Plaintiff to judgment as a matter of law. "Thus, the Court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993). Such is the directive from Rule 56(e). *See* Fed. R.Civ.P. 56(e) ("If the adverse party does not ... respond, summary judgment, *if appropriate,* shall be entered against the adverse party.") (emphasis added).

### III. Discussion

■ The Supreme Court addressed the question of whether or not a guest of a crew member to a vessel can bring suit against the owner of the vessel for injuries on a claim for unseaworthiness. In *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), the Supreme Court examined exactly those facts and concluded that the unseaworthiness doctrine is inapplicable to an invitee to a vessel. *See id.* at 629, 79 S.Ct. 406; *see also Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 208 n. 6, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).

Examining the record before the Court, it is uncontroverted that this Claimant is not a member of the crew. No facts exist, no argument offered by the Claimant and none can be discerned by the Court that the Claimant is "a member of the ship's company ... [or] of that broadened class of workmen to whom the admiralty law has latterly extended the absolute right to a seaworthy ship." *Id.* Thus, the Claimant's assertion under this theory cannot prevail as a matter of law.

Lastly, the Claimant raises a claim of negligence. Plaintiff argues convincingly that the failure of the Claimant to respond to the aforementioned Request for Admissions, specifically Admission 8 ("Admit that you have no evidence that your alleged accident on or about November 15, 1997 was caused or contributed to by the negligence or fault of the Petitioner or any employee or agent of Petitioner."), meets the Plaintiff's initial burden on summary judgment. Therefore, Claimant has admitted that she has no evidence to establish her accident was caused by the negligence or fault of the plaintiff. As the noted earlier, once a movant has met its initial burden on a Motion for Summary Judgment, the burden shifts to the non-moving party; reliance upon the non-moving party's original pleadings is not sufficient to meet this burden. *See Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548.

Here, the Claimant failed to respond to this pending Motion for Summary Judgment. The Court finds no basis to conclude that the Claimant met her burden.

### IV. Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

## ON MOTION TO RECONSIDERATION

This matter is before the Court on the Claimant's Motion to Reconsider Pursuant to F.R.C.P. Rule 59(e) filed on November 22, 1999. Plaintiff filed an initial response in opposition on December 3, 1999. After examination of the pleadings, the Court heard oral argument on December 6, 1999.[1] At that time, the Court directed that Plaintiff have an opportunity to supplement its response, and directed such supplement to be filed within seven (7) days. The supplement having been received on December 13, 1999, the matter is ripe for judicial determination.[2] For the reasons stated *infra,* Claimant's Motion is **DENIED.**

### I. Factual & Procedural History

Plaintiff in this action is the owner of the vessel, F/V Triangle I, a scallop boat which was moored on November 15, 1997 in Hampton, Virginia, within the Eastern District of Virginia. On that date, the Claimant, Nancy S. Russell, was injured on board the vessel. She now claims injuries as a result of the "unsafe and unseaworthiness of the vessel a well as the careless and negligent conduct of the captain and crew of the vessel." Claimant's Answer at 3(sic). In her answer, the Claimant claims that she was invited to visit with a member of the ship's crew and sustained injuries from a hatch cover. As a result of her injuries, Claimant answered the Plaintiff's complaint with a claim for four hundred twenty five thousand dollars ($425,000.00). *See id.* Both the Plaintiff and Claimant agree that the Claimant was not a member of the crew of the Triangle I at the time of her injury. *See id.; see also* Plaintiff's Complaint at 1.

The Claimant has consistently failed to respond to events in this case. In addition to the failure to file timely a response to the Motion for Summary Judgment, the Claimant further failed to file a responsive pleading to the Plaintiff's Motion for Judgment on the Pleadings, filed August 23, 1999, and failed to respond to the Request for Admissions. Despite having acknowledged receipt of the Request for Admissions before a Magistrate Judge at the Initial Pretrial Conference on September 9, 1999 and having represented at that conference that responses would be forthcoming, Claimant did not respond to this discovery.[3] Just prior to the Court's most recent action of November 17, 1999, Plaintiff filed a Motion to Compel stating that Claimant had not responded to the Interrogatories and Request for Production of Documents.

On November 17, 1999, the Court granted the Plaintiff's Motion for Summary Judgment and ordered that Judgment be entered for the Plaintiff. Also on November 17, 1999, the Clerk of the Court received correspondence from Attorney Ralph Rabinowitz, stating that he was joining in the representation of the Claimant. Writing that he had performed a "cursory review of the file," Attorney Rabinowitz

---

1. The Court conducted a show cause hearing to determine whether to discipline Claimant's attorneys; the factual predicate for which is closely related to this motion and to which the disposition will be addressed by way of a separate Memorandum Opinion and Order.

2. Claimant has ancillary motions attendant to the primary motion also pending before this Court that will be addressed herein: Claimant's Motion to Allow Tardy Filing of Claimant's Affidavit in Opposition to the Motion for Summary Judgment filed November 18, 1999 (Plaintiff's Opposition filed on December 2, 1999); and Claimant's Motion to File Late Response to Request for Admissions No. 8

filed December 1, 1999 (Plaintiff's Opposition filed on December 14, 1999).

3. Federal Rule of Civil Procedure 36 provides in part that:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree in writing, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

advised that he would "shortly file a motion to respond late to the Motion for Summary Judgment, and a motion to file late responses to the Request for Admissions ...." Letter from Attorney Rabinowitz to the Court (Nov. 17, 1999).[4] The Clerk of the Court entered judgment on November 17, 1999.[5] On November 18, 1999, Attorneys Rabinowitz and Lawrence submitted a one paragraph motion seeking leave to file an affidavit in opposition to the Motion for Summary Judgment. On that date, Attorney Rabinowitz filed a Motion to Dissolve the Injunction and Lift the Stay, as well as a Memorandum of Law in support of both Motions. On December 1, 1999, the Claimant moved for leave to file a late response to the Request for Admissions No. 8.

## II. Legal Standard

Federal Rule of Civil Procedure 59(e) permits a party to seek alteration or amendment within ten days of the entry of judgment. *See* Fed.R.Civ.P. 59(e). The United States Court of Appeal for the Fourth Circuit recognized in *Hutchinson v. Staton,* 994 F.2d 1076 (4th Cir.1993), three grounds by which relief may be granted under Rule 59(e).

> While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*Id.* at 1081. Claimant does not assert an intervening change in controlling law and at hearing denied the existence of any new evidence not previously available at trial. Rather, her Rule 59(e) request raises the

third ground. Claimant argues that "justice would dictate that the sins of the attorney not be placed on the innocent claimant," the sins of her attorney being the "failure of Attorney Lawrence and his firm to respond to any outstanding pleadings." Claimant's Memorandum of Law in Support at 1. The Claimant does concede that "the Court was within its power to grant summary judgment on the failure of Frank Lawrence and his firm to respond to outstanding pleadings ...." *Id.* However, the Claimant suggests the Court's grant of summary judgment was clear error of law. Although mentioned in passing during the course of the hearing of December 6, 1999, the Claimant does not raise, thus the Court does not address, Rule 60(b). *Cf. Simmons v. Ghent,* 970 F.2d 392 (7th Cir.1992)("Any motion seeking to alter or amend the judgment, however the motion be labeled, is deemed a Rule 59(e) motion, provided it is served within ten days.").

## III. Discussion

Claimant alleges two grounds, that the Court's granting of summary judgment (1) embodies manifest injustice or (2) is a clear error of law. The Court will examine both grounds in turn.

### A. Manifest Injustice

Claimant's new counsel argued at hearing and in pleadings two arguments in support of manifest injustice in this Court's grant of summary judgment on November 17, 1999. First, Claimant suggests that the Court's action was in disregard to new counsel's attempt in the literal final hour to appear. Secondly, Claimant argues now that it is manifest injustice for the "sins of her attorney" to be visited against her.

---

**4.** Attorney Rabinowitz proffers to the Court that he transmitted facsimile copies of the November 17th correspondence on November 16th, starting at 5:29 PM to the Court, the Plaintiff's counsel (5:35 PM), and the Clerk of the Court (5:39 PM).

**5.** A review of the docket entries for this case shows judgment as "entered by the clerk 11/17/99 and filed 11/18/99."

*The Appearance of Attorney Rabinowitz: Timing & Efficacy*

Attorney Rabinowitz suggested at oral argument that some weight is assignable to his facsimile transmission to the Court, which was received past office hours on November 16th and entered by the Clerk of the Court as of November 17, 1999. The logical conclusion to this argument is that upon receipt of the facsimile transmission, the Court should have delayed granting summary judgment. Thus, the Claimant suggests, manifest injustice has been allowed to occur.

As preliminary matters, the Court specifically notes that the Claimant enjoys the right to choose her own attorney in this admiralty action. That being stated, the Court also notes a duty of the Court to ensure the orderly administration of justice through the control of its docket and the judicious use of discretion in case management.

■ The Court, in addressing this question, first observes that there is no Local Rule of Civil Procedure as to filing by facsimile transmission. Federal Rule of Civil Procedure 5(e) does permit filings by facsimile transmission, but only upon permission of the Court via a local rule. "Implicit [within Rule 5(e)] is the concept that, absent a local rule authorizing filing by facsimile, such filings are null." *McIntosh v. Antonino*, 71 F.3d 29, 35 (1st Cir. 1995). Thus, the facsimile transmissions are deemed null and of no legal effect.

■ Even if the Court was inclined to accept a facsimile submission, the filing was received well-past 5:00 PM on November 16, 1999. While the Court is deemed "always open" under Federal Rule of Civil Procedure 77 to accept filings, *see* Fed. R.Civ.P. 77(a), as the United States Court of Appeals for the First Circuit noted in *McIntosh*, filing is only complete upon receipt by a judicial official. *See McIntosh*, 71 F.3d at 35 (holding that filing "means delivery into the actual custody of the proper officer."). In *McIntosh*, the Court

of Appeals declined to recognize a purported facsimile pleading for a number of reasons, including the receipt after the close of business. *See id.*

Furthermore, the Court did not order that filing with the Court itself would satisfy the requirement of the Rules and, having considered the history of this case, the Court declines to *nunc pro tunc* provide for filing with the Court. *See* Fed. R.Civ.P. 5(e)("[T]he judge may permit papers to be filed with the judge ...."). Thus, if any weight was to be assigned to the facsimiles, they would still be noted as received on November 17, 1999, after the Court's Order granting summary judgment, when the signed original letter was received by the Clerk of the Court.

Assuming the Court *was* to accept the facsimile transmissions as proper *and* credit them with receipt on November 16, 1999, this all is for naught, as the letter fails to provide any reason, ground, or rationale sufficiently stated or supported for the Court to have withheld action in the case. Newly associated counsel's assertion, based upon "cursory review" of the file, is insufficient to bring this Court to a halt in the administration of justice. Every day of delay comes at the expense of the Plaintiff who is entitled to the benefit of the rules, as the Plaintiff opted to comply with the Rules. *Cf. Link v. Wabash*, 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)("But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.").

■ The Court has inherently authority to "refuse to allow an appearance by qualified counsel ... when it would delay the action or in some other way harass the other litigants or the Court." *Stafford v. Mesnik*, 63 F.3d 1445, 1449 (7th Cir.1995). In the exercise of its discretion in the instant case, the Court will permit the entry of appearance by Attorney Rabinowitz on November 17, 1999, the date the

Court has determined his original, signed letter to the Court to have been received by the Clerk of the Court.

### Actions of Claimant's Attorneys & Associated Firm

■ Notwithstanding Claimant's recent flurry of activity, the results of this case largely derive from the inaction of the Claimant. As set forth in the recitation of the factual and procedural history *supra*, as well as in the November 17, 1999 Memorandum Opinion and Order of this Court, the delinquency of the Claimant's attorney to respond to the Request for Admissions, to oppose the Motion for Judgment on the Pleadings, and to oppose the Motion for Summary Judgment, create the chain of events that (1) give rise to the undisputed facts in this case and that (2) led this Court to conclude that Claimant did not meet her reply burden in a Summary Judgment proceeding to produce evidence showing a material factual dispute. *See* Memorandum Opinion & Order at 654 (Nov. 17, 1999). Claimant now argues that these delinquencies result in manifest injustice against her. In support of this, the Claimant focuses upon the psychiatric care Attorney Lawrence received during the pendency of this case. Having examined the underlying circumstances of Attorney Lawrence's condition, as well as the totality of the circumstances illuminated during the December 6, 1999 hearing, the Court concludes that granting summary judgment was proper and will not be set aside.

Attorney Rabinowitz, on behalf of the Claimant, appeals to the search for justice within the judicial system. In essence, he argues that, "justice would dictate that the sins of the attorney not be placed on the innocent claimant," the sins of her attorney being the "failure of Attorney Lawrence and his firm to respond to any outstanding pleadings." Claimant's Mem-

orandum of Law in Support at 1. Attorney Rabinowitz argues that the disability of Attorney Lawrence should be viewed as excusable neglect by the Court, allowing the Court to overlook the multiple and regular instances of delinquency that redound to the detriment of his client, the Claimant.

As set forth in this Order, as well as the Memorandum Opinion and Order of November 17, 1999, significant delay existed in this matter as a result of the failures of Claimant to respond. The lack of responsiveness to the Court runs contrary to the attorney's ultimate responsibility to the client. The Claimant in this matter was represented initially by Attorney Frank D. Lawrence, III, a member of the Virginia Bar and the bar of this Court. Attorney Lawrence is presumed familiar with the rules and practices of this Court as a member of the bar of this Court. Additionally, the Court further notes that Attorney Lawrence is associated with the firm of Joynes & Marcari, P.C., of Virginia Beach, Virginia. At the Initial Pretrial Conference, Lorin D. Hay, Esquire, also an associate of said firm, appeared before this Court on behalf of the Claimant and in place of Attorney Lawrence.

The record before the Court was supplemented during the hearing of December 6, 1999. At that time, the Court received information and argument from Attorneys Lawrence, Hay, and supervising firm partner Donald W. Marcari, Esquire, as to the nature and circumstances surrounding the firm's representation of the Claimant.

Attorney Lawrence is a seasoned member of this bar, possessing an extensive practice, it would appear, in this district, as well as the courts of North Carolina. Upon inquiry from the Court, Attorney Lawrence proffered that since January 1999 he has suffered from a still unspecified mental condition.[6] Attorney Law-

---

**6.** Neither in his proffer to the Court, the statements of associated attorneys, the statement of his supervisor, nor the letter from his treat-

ing psychiatrist, does Attorney Lawrence specify what, if any, particular mental disorder, disease, or condition he suffers from.

rence described a condition where he allowed several cases under his stewardship to fall into various stages of problems, but none to the degree seen here. Attorney Lawrence also proffered that he has sought professional attention and the use of medications to control his condition. A period of experimentation occurred and only recently has a particular medication taken full effect. In support of these statements, Attorney Lawrence submitted to the Court a letter from Dr. Dan L. Darby, a psychiatrist, dated November 22, 1999.

Even in light of these statements and accepting them as true, the Court cannot conclude that Attorney Lawrence suffered from a mental condition that would explain his conduct in this case. Attorney Rabinowitz represented to the Court in oral argument that in essence the Claimant was without the assistance of counsel. However, the submission by Dr. Darby to the Court states specifically that Attorney Lawrence is "certainly not disabled." Letter from Darby to the Court (Nov. 22, 1999). This is borne out by the activities of Attorney Lawrence these past few months.

Attorney Lawrence represented to the Court that during the period of time running from September 1999, he has maintained a robust and varied practice before the state and federal courts of Virginia and North Carolina. His practice during that time included numerous depositions and ancillary proceedings, such as motion and calendar appearances.[7] Moreover, during this time period, Attorney Lawrence conducted a one week trial in North Carolina,

engaged in mediation on behalf of another client, as well as presumably interacted with opposing counsel in course of setting up the referenced depositions, conducting trials, and conducting court appearances. Indeed, the Initial Pretrial Conference was attended by Attorney Hay, in *lieu* of Attorney Lawrence, because Attorney Lawrence was conducting a trial in the Circuit Court of the City of Virginia Beach.

Attorney Lawrence claims that high turnovers in his support staff at the firm impaired his ability to meet the deadlines of this Court. Attorney Marcari confirmed the high turnover of para-legal professionals assigned to Attorney Lawrence. However, the burden and professional obligations rest with the attorneys of the firm and provides no relief to the Claimant. *Cf.* Virginia Rule of Professional Conduct 5.3 (effective Jan. 1, 2000).

Before the Court, Attorney Marcari, a name partner of the firm confirmed to the Court that the Claimant is a client of the firm of Joynes & Marcari, P.C. Evidence of the firm's collective representation of the client was further supported by the appearance of Attorney Lorin D. Hay on behalf of the Claimant at the Initial Pretrial Conference. Attorney Hay stated that the various attorneys of the firm substitute with one-another in the representation of clients when the primary attorneys are not available. Thus, the failures of Attorney Lawrence must be considered in this further light. The Claimant was not just failed by her attorney, she was failed by the firm.

The Court finds that no tenable explanation exists for the failure of the attorneys

---

See Letter from Darby to the Court (Nov. 22, 1999). However, even if such information was available, the Court would not overlook the diverse practice Attorney Lawrence conducted, and the contemporaneous failings of Attorney Lawrence's associated colleagues and supervising firm principals, which also redound to the Claimant's detriment, as will be further discussed *infra*. If Attorney Lawrence did suffer from a disability, he was obligated to withdraw from the representation. *See* DR 2–107 ("[A] lawyer shall with-

draw from representing a client if … the lawyer's physical or mental condition materially impairs the lawyer from adequately representing the client ….").

7. Attorney Lawrence specifically noted depositions on October 14th and 22nd, as well as a mediation on October 18th. Another deposition in North Carolina was mentioned by Attorney Lawrence, but no date specified.

to respond to the varied pleadings in this case that would serve to excuse the Claimant from the defaults of her counsel. "[O]ne cannot voluntarily choose an attorney and then avoid the consequences of the attorney's acts or omissions." *In re Walters,* 868 F.2d 665, 668–69 (4th Cir. 1989).

As noted by Justice Harlan in *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), in the context of a *sua sponte* dismissal for want of prosecution by a trial court,

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* at 633–34, 82 S.Ct. 1386. Furthermore, as the Supreme Court then noted, "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Id.* at 634 n. 10, 82 S.Ct. 1386.[8] Such remedy is in addition to the Court's remedy for any violation of an attorney's responsibilities to the Court as an officer of the Court or exercise of the Court's inherent authority to regulate the bar appearing before it. *See Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) ("The two judicial systems of courts, the state

judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom ... lawyers are included."); *see also In re Finkelstein,* 901 F.2d 1560, 1564 (11th Cir.1990)("Because lawyers are officers of the court which granted admission, such courts are necessarily vested with the authority, within certain limits, to impose reasonable sanctions for lawyer misconduct.").

The Court concludes that no manifest injustice exists in the grant of summary judgment.

### B. Clear Error of Law

Claimant contends that the Plaintiff, as a matter of law, was negligent in allowing the hatch cover to fall on the Claimant's knee. As legal authority for this contention, Claimant cites to *Farr v. NC Machinery Co.,* 186 F.3d 1165 (9th Cir.1999), a suit in admiralty arising from the Western District of Washington. Claimant's reliance upon *Farr* is misplaced. First, the Court notes that *Farr* only holds persuasive authority and Claimant cites no case law from this Circuit. Secondly, the *Farr* decision extensively addresses the question of comparative negligence in admiralty. *Farr* does not hold, as Claimant contends, that heavy falling objects in the admiralty context constitute negligence as a matter of law.[9]

■ Furthermore, assuming *arguendo* that such a proposition exists and the Court is persuaded to apply it, the factual basis before the Court does not support this legal principle. As set forth in the Court's Memorandum Opinion and Order of November 17, 1999, unanswered request for admissions are deemed admitted as a

---

**8.** The argument of Attorney Rabinowitz that the Claimant does not truly have recourse of a malpractice action is not relevant to this analysis.

**9.** Claimant's counsel cited the following cases: *Pacific Insurance Co. v. American Na-*

*tional Fire Insurance Co.,* 148 F.3d 396 (4th Cir.1998); *Collison v. International Chemical Workers Union, Local 217,* 34 F.3d 233 (4th Cir.1994); and *Hutchinson v. Staton,* 994 F.2d 1076 (4th Cir.1993). These cases likewise offer little support for Claimant.

matter of law.[10] *See* Fed.R.Civ.P. 36(a). As far back as 1946, this has been the case law of this circuit. *See Batson v. Porter*, 154 F.2d 566, 568 (4th Cir.1946); *Donovan v. Porter*, 584 F.Supp. 202, 207–08 (D.Md. 1984); *see also Foxworth v. World Book Encyclopedia, Inc.*, 838 F.2d 466, 1988 WL 6814 (4th Cir.1988)(unpublished table decision)(holding that "[u]nder Fed.R.Civ.P. 36(a), the matters asserted in the [unanswered] request for admissions are deemed true.").[11] Only two possible avenues exist for the Claimant: withdrawal of the deemed admissions or permission to introduce the affidavit, not withstanding the admissions.

## Withdrawal of Admissions

■ In seeking leave to file a late denial of Request for Admission No. 8, Claimant inherently seeks to withdraw or amend her deemed admissions. Clearly, no absolute right to withdraw admissions exists. *See Branch Banking & Trust Co. v. Deutz–Allis Corp.*, 120 F.R.D. 655, 660 (E.D.N.C. 1988). The Court recognizes the legal principle that guided those courts that permitted the withdrawal of deemed admissions when confronted with the contrary factual information. *See FDIC v. Prusia*, 18 F.3d 637, 641 (8th Cir.1994)("Permitting the amendment of responses to a request for admissions is in the interests of justice if the record demonstrates that the 'admitted' facts are contrary to the actual facts."); *see also Branch Banking & Trust Co.* 120 F.R.D. at 660 ("In a proper case, when an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b)

withdrawal should be allowed."). However, this is at the discretion of this Court. *See American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir.1991).

■ Claimant has not shown the Court a meritorious reason to justify the exercise of its discretion. The statement of the affiant are not facts just discovered or previously unknown to the Claimant. In fact, this is the statement of the Claimant herself now being submitted to the Court. Furthermore, this is a post-trial motion to withdraw the admissions.

The Court entered judgment long after Claimant's counsel was admittedly on notice from opposing counsel and this Court about Claimant's delinquency in answering discovery.[12] Plaintiff explicitly cited the unanswered admissions in its Motion for Summary Judgment. With the passage of time and as each moment for response to a pleading slipped by, the Claimant's burden for withdrawal of the deemed admissions is raised and the prejudice to the Plaintiff is increased. Manifest injustice may have occurred to the Claimant, but her remedy lies in another action, against other parties, and under other theories. Her admission of "no evidence" is "conclusively established." Fed.R.Civ.P. 36(b).

## Motion to File Late Response to Request for Admission 8

This Court declines to exercise the discretion afforded by Rule 59(e) to permit Claimant to file late her proffered affidavit. *See RGI, Inc. v. Unified Industries, Inc.*, 963 F.2d 658 (4th Cir.1992)(holding that Fed.R.Civ.P. 59(e) governed tardy

**10.** Plaintiff proved to the satisfaction of the Court, and Claimant has not disputed, that the Request for Admissions were served properly and that Claimant did not respond to them. Claimant raises no objection to the form of service or the substance of the Request for Admissions.

**11.** Admission 8 of the Request for Admissions reads: "Admit that you have no evidence that your alleged accident on or about November 15, 1997 was caused or contributed to by the

negligence or fault of the Petitioner or any employee or agent of Petitioner."

**12.** Counsel for Plaintiff represented in open court that Attorney Lawrence did not answer telephone calls and mail, a fact not disputed by any of the Claimant's attorneys. Attorney Hay admitted specifically that this matter was raised before a Magistrate Judge at the Initial Pretrial Conference, thus notice of past due discovery was given by this Court as well.

affidavits once a trial court granted summary judgment). Allowance of the affidavit would undermine the goal of the Federal Rules and Local Rules of providing a fully informed basis for the Court to rule. The Court notes this is a position shared with the courts of other sister circuits. *See e.g., Johnny Blastoff Inc. v. L.A. Rams Football Co.,* 188 F.3d 427 (7th Cir. 1999)("The motion for reconsideration is not an opportunity for a party to correct its own procedural failures or introduce evidence that should have been brought to the attention of the court prior to judgment.").

The United States Court of Appeals in the Seventh Circuit best expressed the well-founded concern of this Court for the fair administration of justice that would be compromised by consideration of the affidavit. "This Court, along with the other twelve circuits, has in the past recognized and will continue to recognize the importance of enforcing its procedural rules for filing and responding to motions for summary judgment; if we did not, we would essentially be left with a court in chaos." *Johnny Blastoff Inc.,* 188 F.3d at 439. This echoes the observations of the United States Court of Appeals for the Fourth Circuit, "[t]he District Court for the Eastern District of Virginia is among the busiest in the nation, and it is obvious that the court must necessarily require substantial compliance with the rules of procedure in order best to dispense justice for all." *Foy v. Norfolk & W. Ry. Co.,* 377 F.2d 243, 247 (4th Cir.1967). Such remains true to this day.

Accordingly, having closely reviewed and examined the circumstances of Attorney Lawrence's performance, as well as the apparent lack of action by other members or associates of the firm, the Court cannot find a sufficient reason to permit the filing of the affidavit.

## IV. Conclusion

Therefore, Claimant's Motion for Reconsideration is **DENIED**. The Motion for Leave to File Late Response to Request for Admission No. 8 is **DENIED**. The Motion to Allow Tardy Filing of Claimant's Affidavit in Opposition to Summary Judgment is **DENIED**. All remaining motions before the Court are thereby deemed **MOOTED**.

On the matter of the discipline of Attorneys Lawrence and Hay a separate Memorandum Opinion & Order shall issue.

**IT IS SO ORDERED.**

## MEMORANDUM OPINION AND ORDER

(Discipline & Sanctions)

This matter is before the Court on the question of discipline for Attorneys Frank D. Lawrence, III and Lorin D. Hay, both associates with the Virginia Beach law firm of Joynes & Marcari, P.C. This Court issued an Order to Show Cause on November 17, 1999 to Attorneys Lawrence and Hay to appear before this Court to show cause why sanctions and discipline should not be imposed. The Court conducted a hearing on December 6, 1999 and took this matter under advisement. The matter is now ready for decision.

## I. Factual History & Procedural Background

Attorneys Lawrence and Hay appear before the Court as Counsel to Claimant, Nancy S. Russell, in the above admiralty limitations action. Attorney Lawrence first appeared in this case as counsel on Claimant's Claim and Answer on August 2, 1999. Attorney Hay appeared in place of Attorney Lawrence at the Initial Pretrial Conference held September 9, 1999 before a Magistrate Judge of this Court.

The Claimant, through counsel, has consistently failed to respond to events in this case. In addition to the failure to file timely a response to the Motion for Summary Judgment, the Claimant further failed to file a responsive pleading to the Plaintiff's Motion for Judgment on the Pleadings, filed August 23, 1999, and failed to respond to the Request for Admissions,

despite having acknowledged receipt of the Request for Admissions before a Magistrate Judge at the Initial Pretrial Conference on September 9, 1999 and represented at that conference that responses would be forthcoming.[1] Just prior to the Court's November 17, 1999 grant of summary judgment, Plaintiff filed a Motion to Compel stating the failure of the Claimant to respond to the Interrogatories and Request for Production of Documents.

On November 17, 1999, the Court granted the Plaintiff's Motion for Summary Judgment and ordered that Judgment be entered for the Plaintiff.

## II. Legal Standards

This Court now determines that both counselors are subject to the jurisdiction of this Court. Both attorneys, whom the Court finds to have entered appearances in this matter, are members of the bar of the United States District Court for the Eastern District of Virginia. As members of this bar and admitted members of the Virginia State Bar, they are presumed knowledgeable of the rules of this Court, as well as their professional obligations as partially defined by the Virginia Code of Professional Responsibility,[2] and the "lore of the profession." *In re Snyder*, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); *cf. Burger v. Kemp*, 483 U.S. 776, 784, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)("Moreover, we generally presume that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client.").

The Court finds authority to impose sanctions and discipline on these two attorneys based on the Court's inherent authority (1) to enforce the United States District Court for the Eastern District of Virginia's Local Rules of Civil Procedure (hereafter "Local Rules"); (2) to sanction and discipline attorneys for "bad faith" litigation practices occurring before it;[3] and (3) to enforce Rule 37 as to pre-trial discovery practices. Having issued an Order to Counsel to Show Cause and conducted a hearing as to the facts and circumstances of this case, the Court finds that Attorneys Lawrence and Hay had sufficient notice of this Court's intention to enforce various provisions and they had sufficient opportunity to respond.

■ "A court has the inherent authority to disbar or suspend lawyers from practice." *In re Evans*, 801 F.2d 703, 706 (4th Cir.1986). The United States Court of Appeals for the Third Circuit held in *Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3d Cir.1985)(en banc), "the district courts have the power, absent a statute or rule promulgated by the Supreme Court to the contrary, to make local rules that impose reasonable sanctions where an attorney conducts himself in a manner unbecoming a member of the bar, fails to comply with any rule of court, including local rules, or takes actions in bad faith." *Id.* at 569 (further noting similar findings of authority in the Second, Ninth, and Tenth Circuits). The United States Court of Appeals for this circuit adopted the *Eash* reasoning in 1986. "The *Eash* opinion contains an in-depth analysis of the inherent

---

1. Federal Rule of Civil Procedure 36 provides in part that:

 > Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree in writing, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

2. The Virginia Code of Professional Responsibility is effective until January 1, 2000, at which time the revised Virginia Rules of Professional Conduct become effective in Virginia and for members of this Court's bar. *See* Local R. Civ. P. 83.1(I)("The ethical standards relating to the practice of law in this Court shall be the Virginia Code of Professional Responsibility now in force and as hereafter modified or supplemented.").

3. The Court attaches special significance to the phrase "bad faith," as discussed *infra*.

power concept as used in the federal court system. That analysis need not be repeated here. We agree with it ...." *White v. Raymark Indus., Inc.,* 783 F.2d 1175, 1177 (4th Cir.1986).

Any action by this Court is in addition to any other action possible by other licensing bodies and other courts having similar regulatory authority. This Court is one of the "two judicial systems of courts, the state judicatures and the federal judiciary, [to] have autonomous control over the conduct of their officers, among whom ... lawyers are included." *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). As the United States Court of Appeals for the Eleventh Circuit observed, "[b]ecause lawyers are officers of the court which granted admission, such courts are necessarily vested with the authority, within certain limits, to impose reasonable sanctions for lawyer misconduct." *In re Finkelstein,* 901 F.2d 1560, 1564 (11th Cir.1990). Thus, this "federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

### III. Discussion

 As this Court itself observed in 1990, it "is charged with the duty and responsibility of supervising the conduct of attorneys who appear before it." *Tessier v. Plastic Surgery Specialists,* 731 F.Supp. 724, 729 (E.D.Va.1990). Imposition of discipline is necessary for the preservation of the integrity and public repute of the Court and bar, and to enforce respect for the Local Rules of this Court. In adoption of the Local Rules of this Court, the Court vested each judicial officer with the authority to command the respect, attention, and diligence of counsel in the various matters before this Court through the enforcement of the Local Rules.

*Attorney Lawrence: Violation of Local Rule 7(E)*

In their collective failures to respond, counsel for the Claimant violated Local Rule of Civil Procedure 7(E) and devastated Claimant's legal position. The unopposed Motion for Summary Judgment largely rested upon a factual basis established when no reply was made to the Request for Admissions.[4] By failing to submit an opposing brief, memorandum or any other manner or form of filing, the Claimant's opportunity to meet her rebuttal burden was lost and the ability of this Court to engage in thoughtful, informed reflection was hampered.

Attorney Lawrence does not deny violation of Local Rule 7(E)'s requirement for the filing of responsive pleadings, unless relieved by the Court. Indeed, Attorney Lawrence admits the failure to file or respond to any matter beyond the initial Claim.

Suitable disciplinary actions will be set forth below. The Court notes the full panoply of inherent disciplinary tools available in these circumstances, including the power of suspension. *See In re Tatum,* 587 F.2d 682 (5th Cir.1979)(imposing six-month suspension on attorney who allowed a client's appeal to be dismissed for failure to file a brief or request an extension of time).

 In assessing a monetary sanction under the inherent authority of the Court, this Court must determine if the attorneys "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *cited in Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123.

 However, for the imposition of other, non-monetary discipline in the course of regulating the conduct of members of its bar, the Court finds such a finding is not necessary. *See Harlan v.*

---

**4.** In application of Federal Rule of Civil Procedure 36, the unanswered Requests were deemed "conclusively established." Fed. R.Civ.P. 36(b).

*Lewis*, 982 F.2d 1255, 1260 (8th Cir.1993). The United States Court of Appeals for the Eighth Circuit expressly examined *Chambers* and *Alyeska*, as well as *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), and reasoned that the bad faith requirement was not extended to "every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power." *Harlan*, 982 F.2d at 1260.[5] The Court is mindful of the Supreme Court's direction that in the exercise of inherent power a court must act "with restraint and discretion." *Roadway Express*, 447 U.S. at 764, 100 S.Ct. 2455.

■ Nonetheless, the Court finds that Attorney Lawrence meets the "bad faith" requirement of *Roadway*. While not evincing true bad faith, Attorney Lawrence's actions, which he admitted were knowing and voluntary, constitute wanton behavior of a nature sufficient to invoke the inherent power of this Court. The Supreme Court in *Alyeska* did not constrain its ruling only to traditional notions of bad faith, but set forth additional triggering behaviors, including wanton conduct.

Wanton conduct is a less frequently invoked trigger for a court to invoke its inherent authority, but the record of inattention, neglect, and delinquency were well documented by this Court in its Memorandum Opinion and Order of November 17, 1999 granting summary judgment, as well as the Memorandum Opinion and Order of December 20, 1999 denying the Claimant's Motion for Reconsideration Pursuant to Rule 59(e). The inattention, neglect, and delinquency occurred *with* the knowledge of Attorney Lawrence that it was occurring, *without* any action to mitigate the damage to his client and the inconvenience to the Court, and in clear violation of the established Local Rules of this Court.

Thus, the disregard of the Local Rules rises to a level: (1) sufficient to invoke this Court's inherent authority to justify monetary sanctions and (2) in excess of that required for non-monetary sanctions. As discussed below, despite Attorney Lawrence's allusions to some mental disease, defect, or impairment at the time of these lapses, the Court finds no plausible rationale that Attorney Lawrence's behavior was not voluntary.

The Court further finds that the willful disobedience of Attorney Lawrence of the Court's Initial Pretrial Order that led to the now mooted Motion to Compel justifies additional monetary sanctions. *See Chambers*, 501 U.S. at 45, 111 S.Ct. 2123 ("[A] court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.' ").

■ Rule 37, while governing pre-trial discovery disputes and providing for sanctioning of attorneys, does not provide authority to this Court to act where the Motion to Compel was never heard and is then subsequently mooted, but where the offending party admits their delinquency, yet never actually provides any discovery. *See* Fed.R.Civ.P. 37(a)(4).[6] Rule 37 aims

---

**5.** Despite this observation, the *Harlan* court then concluded that bad faith nonetheless was shown by the record set forth by the District Court. *See Harlan*, 982 F.2d at 1260.

**6.** Rule 37(a)(4) reads, in pertinent part, with emphasis added:

(A) *If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed,* the court shall ... require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees ....

(B) *If the motion is denied,* the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees ....

at imposing costs on counsel and parties who frustrate the discovery process and occupy the Court's time with needless disputes. There is no rationale why the behavior of Counsel here is not in contravention of the purpose of discovery. Thus, the Court invokes its inherent authority to fill this unanswered void in the Rule.

It is in the face of these facts that the Court chooses to impose both discipline and monetary sanctions upon Attorney Lawrence pursuant to its inherent authority, as set forth below.

To explain his delinquencies, Attorney Lawrence proffered a letter to the Court from Dr. Dan L. Darby, a psychiatrist treating Attorney Lawrence. Upon examination of the proffered statements alluding to Attorney Lawrence's mental disease, defect, or impairment, the Court concludes that there is no plausible mitigation or explanation for Attorney Lawrence's conduct.[7] Nothing from the record before the Court demonstrates a level of mental impairment, disease, or disability rising sufficiently to vitiate the voluntary and willful nature of Attorney Lawrence's delinquency in responding to various matters in this case. The exten-

sive practice Attorney Lawrence maintained contemporaneously with this case militates against any consideration of this unspecified condition.

Attorney Lawrence detailed to the Court that during the period of time from September 1999, he has maintained a robust and varied practice before the state and federal courts of Virginia and North Carolina. His practice during that time included numerous depositions and ancillary proceedings, such as motion and calendar appearances.[8] Moreover, during this time period, Attorney Lawrence conducted a one week trial in North Carolina, engaged in mediation on behalf of another client, as well as presumably interacted with opposing counsel in course of setting up the referenced depositions, conducting trials, and conducting court appearances. Indeed, Attorney Hay attended the Initial Pretrial Conference in *lieu* of Attorney Lawrence, because Attorney Lawrence was conducting a trial in the Circuit Court of the City of Virginia Beach. Attorney Lawrence, while on notice of the situation, failed to act and allowed his client's legal position to deteriorate.[9]

(C) *If the motion is granted in part and denied in part,* the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

7. The Court could not determine the nature, extent, or type of mental disease, defect, or impairment Attorney Lawrence suffered. The treating psychiatrist only references "symptoms" in his letter to the Court and Attorney Lawrence did not specify himself the nature of the cause of these symptoms. Indeed, the Court is somewhat mystified as to the symptoms themselves. Statements from Attorney Lawrence only detail a "wringing of the hands" and indecision, as well as medication under a mild antidepressant. Attorney Marcari noted that Attorney Lawrence had seemed different, but the Court notes that Attorney Marcari did not report taking any actions to intervene to this Court. *See* Virginia Rule of Professional Conduct 5.1 (effective Jan. 1, 2000). Neither was Attorney Law-

rence impaired to any degree as to cause the attention of other courts, as he reported a robust litigation schedule during the time frame in question, including two trials, several depositions, and a mediation session.

8. Attorney Lawrence specifically noted depositions on October 14th and 22nd, as well as a mediation on October 18th. Another deposition in North Carolina was mentioned by Attorney Lawrence, but no date specified.

9. Attorney Lawrence, during the same time frame, received calls and correspondence from opposing counsel about the various delinquencies. The Court specifically recalls Plaintiff's Counsel's proffer to the Court of a conversation with Attorney Lawrence on October 18th, where Attorney Lawrence was again placed on further notice of delinquencies. The Court itself advised Attorney Lawrence, via Attorney Hay, of the delinquency during the Initial Pretrial Conference. Thus, Attorney Lawrence was on sustained and continuing notice of his inattention to Claimant's case.

In light of these activities, all of which are involved legal matters rising above mere menial activities, the Court finds that if Attorney Lawrence suffered any mental disease, defect, or impairment, it is not sufficient to excuse his conduct.

### Attorney Hay

The record is less clear regarding the conduct of Attorney Hay. Attorney Hay appeared before the Court on behalf of the Claimant at the request of Attorney Lawrence, who was conducting a jury trial in Virginia Beach Circuit Court at the same time. At the Initial Pretrial Conference, conducted before a Magistrate Judge, Attorney Hay stated to the Court that the Claimant would respond to the outstanding discovery. Attorney Hay further agreed to the discovery schedule that underlies the Plaintiff's Motion to Compel that was mooted by the November 17, 1999 Memorandum Opinion and Order.

The Court is faced with the question of an attorney's responsibility when standing in for a colleague through an appearance, but having little actual control, knowledge, or involvement in the case following that appearance. The Court finds Attorney Hay to have no responsibility as to the missed filing deadlines for responsive pleadings under Local Rule 7(E)(1). As to the representations made to this Court during the course of the Initial Pretrial Conference regarding the outstanding Request for Admissions, the Court concludes that responsibility lay with Attorney Lawrence. Attorney Hay is a relatively new associate to the firm, with no authority over Attorney Lawrence. Although not directly applicable to the facts of this case, the Court notes that the pending Virginia Rules of Professional Conduct, based upon the long established American Bar Association's Model Rules of Professional Conduct, provide some guidance for the Court.

Rule 5.1(c) states that "[a] lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer orders, or with knowledge of the specific conduct, ratifies the conduct involved." Virginia Rule of Professional Conduct 5.1(c). Attorney Hay could not order Attorney Lawrence's compliance with the deadlines and he lacked knowledge of the specific conduct involved here, thus did not ratify Attorney Lawrence's actions. Accordingly, the Court concludes no discipline or monetary sanctions are appropriate for Attorney Hay.

### IV. Conclusion

In consideration of the conduct of Attorney Lawrence addressed *supra*, the Court **ORDERS** the following to be the appropriate and measured discipline for Attorney Lawrence:

1. Attorney Lawrence shall be on probation for a period of one year with the Court from the date of this Order. During such time, Attorney Lawrence shall be bound by the terms of probation contained herein.

2. Attorney Lawrence shall not appear or cause to be submitted to the Court any pleading or filing without the association and signature of another member of the bar of this Court. Associated counsel may be an associate or partner of Attorney Lawrence's firm. In associating counsel, Attorney Lawrence shall provide a copy of this Order to the associated attorney, who will share responsibility for that matter. Both leave of the Court for permission to associate counsel and permission of the client, when appropriate, remain required.

3. Attorney Lawrence shall also cause a copy of this Order be submitted to any judge or judicial officer of this Court before whom Attorney Lawrence appears or has a matter currently pending.

4. Attorney Lawrence shall provide a copy of this Order, as well as all other Orders and Memorandum Opinion and Orders rendered in this case to his client, Nancy S. Russell, within five (5) days of this Order and

cause an affidavit to be submitted to the Court upon completion of this task.

5. Attorneys Lawrence shall complete eight (8) hours of continuing legal education on professional responsibility and eight (8) hours of continuing legal education on discovery or pre-trial practice in federal district court within one hundred and eighty (180) days of the date of this Memorandum Opinion and Order, and shall advise the Court of the name of the class or classes he attended, as well as the name of the instructor, the date, time, and the place he attended class. The costs for the continuing legal education is to be borne by Attorney Lawrence personally.

6. Failure to comply with the terms of this probation or the occurrence of further conduct in violation of the Rules of this Court will be grounds for additional sanctions.

The Court further **ORDERS** the following appropriate and measured monetary sanctions:

1. Attorney Lawrence shall personally pay a fine of five hundred dollars ($500.00) to the Court, payable to the Clerk of the Court within thirty (30) days of this Order. Attorney Lawrence shall cause an affidavit to be submitted to the Court upon completion of this task.

2. Attorney Lawrence shall personally pay Plaintiff attorney fees and court filings costs associated with the preparation and filing of the Motion to Compel. Counsel for Plaintiff shall file its application for fees and costs of filing the Motion to Compel within five (5) days of this Order. Attorney Lawrence shall personally pay such fees and costs, unless otherwise directed by the Court, within seven (7) days of the filing of the application.

The Court **COMMENDS** to the attention to Attorney Lawrence, Attorney Hay, and all other attorneys appearing on behalf of the Claimant applicable portions of the Virginia Code of Professional Responsibility and the anticipated provisions of the Virginia Rules of Professional Conduct. Particular attention is drawn to DR 1–103; DR 5–101; DR 5–102(B); DR 6–101; DR 6–102; and EC 6–6, as well as the analogous provisions under the Virginia Rules of Professional Conduct to be effective on January 1, 2000.

**IT IS SO ORDERED.**