**Audley McINTOSH, Plaintiff, Appellant,**

v.

**Thomas ANTONINO, et al., Defendants, Appellees.**

**Nos. 95–1004, 95–1200.**

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1995.

Decided Dec. 1, 1995.

Bernard A. Kansky, Needham, MA, for appellant.

Thomas C. Tretter, Assistant Corporation Counsel, with whom Stephen H. Clark, Acting Corporation Counsel, was on brief, Boston, MA, for appellees.

Before SELYA, CYR and STAHL, Circuit Judges.

SELYA, Circuit Judge.

Well after he had been arrested and allegedly manhandled by Boston police officers,

plaintiff-appellant Audley McIntosh commenced a civil action under 42 U.S.C. § 1983. The district court granted summary judgment in the defendants' favor on the ground that McIntosh had brought suit a day late. McIntosh appeals. We affirm.

## I. BACKGROUND

We set forth the substantiated facts in the light most congenial to the party opposing summary judgment. *See Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993).

Boston police officers arrested appellant during the morning of January 7, 1990. He alleges that the gendarmes wrongfully detained him for several hours and battered him to boot. That afternoon, the police transported appellant to the emergency room of a local hospital where he was treated and released at approximately 7:00 p.m. The authorities charged him with a multitude of offenses (including assault and battery of a police officer), but they did not further detain him.

In short order, a Massachusetts state court dismissed all the charges. At a much later date, appellant's attorney prepared a four-page complaint confined exclusively to a claim premised on 42 U.S.C. § 1983. The complaint contained no pendent causes of action. It named Mayor Raymond Flynn, Police Commissioner Francis Roache, and several "John Does" as defendants. On January 7, 1993—three years to the day after appellant's infelicitous encounter with the police—the lawyer (1) transmitted a facsimile of the complaint's first two pages to the clerk's office of the federal district court, and (2) sent the original complaint, with the required filing fee, to the clerk by certified mail. The

clerk's office received the abbreviated facsimile transmission after hours (i.e., between 6:00 and 7:00 p.m. on January 7).[1] The mailed envelope reached the office on January 8 and a deputy clerk docketed the case that day.

The defendants answered the complaint, denied any wrongdoing, and asserted an affirmative defense based on the statute of limitations. Following the completion of discovery and a belated effort to reconfigure the suit,[2] the remaining defendants moved for *brevis* disposition under Fed.R.Civ.P. 56(c). The lower court granted appellant two extensions of time for responding to the motion. When the second extension expired, the court denied a third request and subsequently decided the Rule 56 motion in the defendants' favor without considering the delinquent opposition that appellant's counsel eventually produced. *See* D.Mass.Loc.R. 56.1 (providing that the facts as presented by the movant are deemed admitted for the purpose of a summary judgment motion when no timely opposition is filed). These appeals ensued.

## II. THE LEGAL LANDSCAPE

The district court rested its decision on the ground that appellant's section 1983 claim was time barred. On appeal, McIntosh disputes this conclusion. To afford needed perspective, we start by reviewing certain abecedarian legal principles that inform our analysis of the issues presented.

### A. *The Summary Judgment Standard.*

■ Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

1. For some reason, the remaining two pages of the complaint, including the demand for judgment, were not sent by facsimile transmission to the clerk's office until the next afternoon.

2. On January 20, 1994, appellant filed an amended complaint that spelled out a bevy of pendent state-law claims, including abuse of process, malicious prosecution, negligent supervision, assault and battery, false imprisonment, intentional infliction of emotional distress, civil conspiracy, and negligence. The amended complaint also purported to add several individual police officers and the City of Boston as defendants, and

simultaneously dropped the mayor and the police commissioner as parties. Given the chronology, we doubt the efficacy of the amended complaint either as a means of asserting neoteric claims or as a vehicle for bringing new defendants into the case. *See, e.g., Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 468 (2d Cir.1995) (explaining that "John Doe" designation cannot be employed to circumvent statutes of limitations, and affirming judgment for individual police officers belatedly added to a civil rights suit). Because we dispose of the appeal on other grounds, we need not probe these points.

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We have written copiously on the idiosyncracies of this rule and on its ramifications, *see, e.g., McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314–15 (1st Cir.1995); *Morris v. Government Dev. Bank,* 27 F.3d 746, 748 (1st Cir.1994); *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Vasapolli v. Rostoff,* 39 F.3d 27, 32 (1st Cir.1994); *Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993); *Pagano,* 983 F.2d at 347; *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 793–94 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); *United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir.1992); *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 351–52 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48–49 (1st Cir.1990), and it would serve no worthwhile purpose to rehearse that jurisprudence here. It suffices to reaffirm that "summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne,* 976 F.2d at 794.

■ To be sure, the district court's assessment of the summary judgment record must comply with certain guidelines. The most salient of these guidelines requires the court to interpret the record in the light most hospitable to the nonmoving party, reconciling all competing inferences in that party's favor. *See Pagano,* 983 F.2d at 347. Nonetheless, a party contesting summary judgment must offer the court more than posturing and conclusory rhetoric. *See Morris,* 27

F.3d at 748; *Medina–Munoz,* 896 F.2d at 8. This principle is brought into bold relief when the motion targets an issue on which the nonmoving party bears the ultimate burden of proof. In that circumstance, the nonmovant must "produce specific facts, in suitable evidentiary form," *Morris,* 27 F.3d at 748, in order to demonstrate the presence of a trialworthy issue and thereby deflect the sharp blade of the summary judgment ax.

■ Questions anent the applicability and effect of the passage of time on particular sets of facts often are grist for the summary judgment mill. *See, e.g., Rivera–Muriente,* 959 F.2d at 352; *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990); *Kali Seafood, Inc. v. Howe Corp.,* 887 F.2d 7, 9 (1st Cir. 1989). And when a defendant moves for summary judgment based on a plausible claim that the suit is time barred, the onus of identifying a trialworthy issue customarily falls on the plaintiff. *See, e.g., Morris,* 27 F.3d at 748.

### B. The Statute of Limitations.

The linchpin of the appellant's case is his section 1983 claim. We, therefore, train our sights exclusively on this claim.[3]

■ Section 1983 creates a private right of action for redressing abridgments or deprivations of federal constitutional rights. The resultant liability is akin to tort liability. *See Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2370, 129 L.Ed.2d 383 (1994); *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 305, 106 S.Ct. 2537, 2541, 91 L.Ed.2d 249 (1986). Section 1983 does not contain a built-in statute of limitations. Therefore, in processing such actions, a federal court must lift a limitation period from state law. *See Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85

---

**3.** Apart from the section 1983 claim, the record reveals no independent basis for federal jurisdiction. Thus, if the lower court appropriately granted summary judgment on the section 1983 claim, then the court (which expressly disclaimed any intention of exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)) acted well within its discretion in jettisoning the appended state-law claims. *See Martinez v. Colon,*

54 F.3d 980, 990–91 (1st Cir.1995) (reaffirming principle that the district court, in its discretion, may dismiss pendent claims contemporaneous with a determination, in advance of trial, that "no legitimate federal question exist[s]"), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995). Consequently, we need not address any claim apart from the section 1983 claim.

L.Ed.2d 254 (1985); *Morris,* 27 F.3d at 748; *Rivera–Muriente,* 959 F.2d at 352.

■ Massachusetts prescribes a three-year limitation period for personal injury actions (such as tort suits for false arrest or assault), *see* Mass.Gen.L. ch. 260, § 2A (1992); *see also Street v. Vose,* 936 F.2d 38, 40 (1st Cir.1991) (per curiam), *cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992), and the parties agreed before the district court that it was appropriate to borrow from this statute to derive the limitation period. Thus, the question before the district court was whether the appellant brought his section 1983 action within the prescribed three-year period.

■ In this venue, the parties briefed the appeal on the same underlying assumption. At oral argument, however, the appellant tried to recharacterize his section 1983 claim as one for malicious prosecution to take advantage of the differently configured limitation period. *See Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 3–4 (1st Cir.1995) (discussing need and methodology for such characterization). This effort comes too late and offers too little. The original complaint asserted that appellant's civil rights had been abridged by means of "false arrest" and "assault and battery." The complaint did not mention malicious prosecution and, indeed, there is nothing in the record to suggest that any of the named defendants had a hand in whatever prosecution may have transpired. Since the district court properly characterized the suit as it stood as one for false arrest, the question before us is precisely the same as the question to which the district court responded. We review the district court's answer to the question de novo. *See Rivera–Muriente,* 959 F.2d at 352.

■ Although the limitation period is borrowed from state law, the jurisprudence of section 1983 directs us to examine federal law in order to determine the accrual period. *See Calero–Colon,* 68 F.3d at 3; *Morris,* 27 F.3d at 748. Under federal law, accrual starts when the plaintiff "knows, or has reason to know, of the injury on which the action is based." *Rivera–Muriente,* 959 F.2d at 353. Most accrual disputes focus on when

the limitation period began to run, that is, when the plaintiff's causes of action accrued. *See, e.g., Calero–Colon,* 68 F.3d at 3–4; *Morris,* 27 F.3d at 749. Here, the commencement date is not a problem: all the relevant actions of the police officers took place on January 7, 1990; the appellant was treated and released from the hospital that day; and he knew then that he had been harmed. Thus, the appellant's cause of action accrued on January 7, 1990. But the accrual period is measured by both a starting date and an ending date, and the pivotal controversy in this case concerns the latter. Consequently, we must shine the light of our understanding on the available facts to determine the date when McIntosh took an action sufficient to interrupt the running of the limitation period.

## III. ANALYSIS

The district court's ruling is stark in its simplicity: the appellant's section 1983 claim arose on January 7, 1990; the three-year limitation period began to accrue then and there; the time for bringing suit ran out on January 7, 1993; the appellant's action was not filed until the next day; and, accordingly, the suit was untimely. The appellant offers a salmagundi of reasons to support his contention that the district court erred in determining that time had passed him by. We examine these reasons below.

### A. *Filing By Facsimile.*

■ The appellant posits that the January 7 facsimile transmission satisfied the filing requirements of the Civil Rules, thus stopping the limitations clock. He is whistling past the graveyard. Absent a local rule authorizing the practice, facsimile filings in a federal court are dead on arrival.

As of January 7, 1993, the Civil Rules provided in pertinent part:

> Papers may be filed by facsimile transmission if permitted by rules of the district court, provided that the rules are authorized by and consistent with the standards established by the Judicial Conference of the United States.

Fed.R.Civ.P. 5(e).[4] The Judicial Conference has "authorized courts, effective December 1, 1991, to adopt local rules to permit the clerk to accept for filing papers transmitted by facsimile transmission equipment, provided that such filing is permitted only (1) in compelling circumstances or (b) under a practice which was established by the court prior to May 1, 1991." *Reports of the Proceedings of the Judicial Conference of the U.S.* 52–53 (1991). The appellant argues that, since the Conference has authorized this method of transmission, filing by facsimile is permissible. This argument disregards both the realities of the instant situation and the text of Rule 5(e).

For one thing, the Conference, at the same time it granted the limited authorization to which we have alluded, warned that "the routine acceptance . . . of court documents by facsimile would present practical problems and would create an administrative and resource burden to the courts." *Id.* The facsimile filing here occurred in the most mundane of contexts and was not brought about by any special exigency but by the attorney's nonchalance. Thus, the circumstances are hardly "compelling."

█ For another thing, the appellant's argument ignores the plain language of Rule 5(e). Implicit therein is the concept that, absent a local rule authorizing filing by facsimile, such filings are null. *See, e.g., In re Hotel Syracuse, Inc.,* 154 B.R. 13, 17 (N.D.N.Y.1993) (holding that a notice of appeal filed by facsimile, not authorized under any local rule, did not interrupt the progression of the appeal period). The appellant's suggested construction would render the reference to local rules superfluous. Since a court called upon to construe a procedural rule should give effect, whenever possible, to every word and phrase contained in the rule's text, *see Jamerson v. Board of Trustees of the Univ. of Ala.,* 80 F.R.D. 744, 749

(N.D.Ala.1978), *see also United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 751–52 (1st Cir.1985) (explicating similar principle in respect to statutory construction), we decline to follow the appellant's lead. The local rules of the United States District Court for the District of Massachusetts do not authorize the filing of papers by facsimile. That ends the matter.

█ In this case, moreover, the appellant's facsimile filing is invalid for two other reasons. First, the January 7 transmission was incomplete. Although the notice pleading requirements of the Civil Rules are to be construed liberally, there are bounds to liberality. For purposes of commencing an action, half a complaint—particularly an unsigned half that does not even contain a demand for judgment—is no better than none.

█ Second, the appellant did not send even the partial facsimile transmission until after the close of business on January 7, 1993. Despite the fact that Fed.R.Civ.P. 77(a) states that "district courts shall be deemed always open for the purpose of filing any pleading or other proper paper . . . ," the word "filing" as used therein is a word of art. It "means delivery into the actual custody of the proper officer." *Casalduc v. Diaz,* 117 F.2d 915, 916 (1st Cir.), *cert. denied,* 314 U.S. 639, 62 S.Ct. 74, 86 L.Ed. 512 (1941). Consequently, Rule 77(a) has been interpreted uniformly to mean that the clerk's office need not be kept open around the clock, and that, outside of ordinary business hours, merely leaving papers in a closed or vacant office does not constitute "filing" sufficient for commencement of an action.[5] *See Greenwood v. State of N.Y. Office of Mental Health,* 842 F.2d 636, 639 (2d Cir.1988); *Casalduc,* 117 F.2d at 916; *see also* 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3081, at 179 (1990).

---

**4.** Later in 1993, Rule 5(e) was amended. The Advisory Committee described the change as "a technical amendment" aimed at "permit[ting] filing not only by facsimile transmissions but also by other electronic means," Fed.R.Civ.P. 5(e), advisory committee's note to 1993 amendment. The revision is not relevant to these appeals.

**5.** After hours, papers can validly be filed by in-hand delivery to the clerk or other proper official. *See Casalduc,* 117 F.2d at 916. In addition, some clerks' offices reportedly have established so-called "night depositories" to accommodate after-hours filings. This case does not involve an established night depository, and we take no view of the efficacy of that practice.

## B. *Filing By Mailing.*

■ The appellant argues that the complaint should be deemed to have been filed on January 7, 1993, because it was mailed on that date. This is a hard sell; as the appellant acknowledges, the Civil Rules do not so provide, and the proposition that he hawks therefore rises or falls on the strength of his thesis that the district court should have followed state practice. The proposition falls.

■ Mass.R.Civ.P. 3 permits the commencement of an action either by filing the complaint (and the concomitant fee) with the clerk of the appropriate court or by mailing the complaint and fee to the clerk by certified or registered mail. Thus, if the appellant had elected to sue in the state court— and state courts have concurrent jurisdiction in suits brought under section 1983, *see Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503 n. 1, 65 L.Ed.2d 555 (1980)— mailing the complaint would have sufficed (if barely) to eclipse the looming temporal bar. The appellant made a different election, however, choosing to invoke the district court's "arising under" jurisdiction, *see* 28 U.S.C. § 1331, and to bring suit in a federal venue. Therefore, federal rather than state procedural rules govern. *See Hanna v. Plumer*, 380 U.S. 460, 470–71, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965).

The appellant suggests two reasons why this case does not come within *Hanna*'s sphere of influence. First, he tells us that using the state procedural rule is fitting because the federal question arises under section 1983 and, therefore, the district court must borrow the appropriate statute of limitations from state law. *See Wilson*, 471 U.S. at 276–80, 105 S.Ct. at 1947–49. But this is a distinction bereft of a meaningful difference.

■ The borrowing directive means no more than it says. "[W]hen it is necessary for a federal court to borrow a statute of limitations for a federal cause of action, [the court should] borrow no more than necessary." *West v. Conrail*, 481 U.S. 35, 39, 107 S.Ct. 1538, 1541, 95 L.Ed.2d 32 (1987). Moreover, when a federal court borrows a limitation period from state law for use in implementing a federal law that does not possess a self-contained statute of limitations, the court is nonetheless applying federal law. The federal court "looks to state law for guidance, but it does so simply because the creation of a statute of limitations is not considered a suitable judicial task." *Hemmings v. Barian*, 822 F.2d 688, 689 (7th Cir.1987). The mantra, then, is that when bridging interstices in federal law, federal courts should borrow "only what is necessary to close the gap left by Congress." *West*, 481 U.S. at 40 n. 6, 107 S.Ct. at 1541 n. 6.

Beyond the need to borrow a limitation period *simpliciter*, the case at hand presents no occasion for resort to state law. In the wake of *West*, federal courts consistently have held that questions concerning the commencement of a section 1983 action in a federal court are governed by Fed.R.Civ.P. 3. *See, e.g., Martin v. Demma*, 831 F.2d 69, 71 (5th Cir.1987); *Del Raine v. Carlson*, 826 F.2d 698, 706–07 (7th Cir.1987). Rule 3 is complete on its face. The appellant has identified no lacuna that must be filled by reference to state law, and none is visible to us.

■ The seamlessness of Rule 3, and its fit with other federal procedural rules, defeats the appellant's claim. Rule 3 adequately covers the mechanics of commencing an action in a federal district court, and the rule makes it transpicuously clear that an action is commenced when the papers are filed. In turn, Fed.R.Civ.P. 5(e) defines filing, for all intents and purposes, as "filing ... with the clerk of the court." [6] The commencement construct created by the Civil Rules is complete and self-contained, and leaves no room for improvisation. Under the construct, the instant complaint was not effectively filed until January 8, 1993, and, therefore, the underlying action was not commenced within the limitation period. When papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of them. *See Cooper v. City of Ashland*, 871 F.2d 104, 105

---

6. Rule 5(e) contains one explicit exception. It allows judges, in their discretion, to "permit the papers to be filed with the judge, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk."

(9th Cir.1989) (per curiam); *see also Torras Herreria v. M/V Timur Star,* 803 F.2d 215, 216 (6th Cir.1986) ("Filings reaching the clerk's office after a deadline are untimely, even if mailed before the deadline.").

▮ In a last-ditch effort to forestall the inevitable, the appellant insists that the animating principle of *Guaranty Trust Co. v. York,* 326 U.S. 99, 109–12, 65 S.Ct. 1464, 1469–71, 89 L.Ed. 2079 (1945), requires that we look to the state procedural rule since establishing a time line will determine the outcome of the litigation. This argument will not wash.

▮ A meaningful discourse on the applicability of federal procedural rules in federal courts cannot begin and end with *York.* In *Hanna* (a case decided subsequent to *York* ), the Supreme Court focused specifically on the purview of the Civil Rules and noted that " 'outcome-determination' analysis was never intended to serve as a talisman." *Hanna,* 380 U.S. at 467, 85 S.Ct. at 1141 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958)). Even in a diversity case (where state law supplies the basis for decision), the correct inquiry is not whether the choice between federal and state procedural rules will prove outcome determinative, but whether a federal rule exists that covers the point in dispute. If it does, it must be applied. *See id.* 380 U.S. at 469–74, 85 S.Ct. at 1142–45. Put another way, when federal and state procedural rules collide, the federal rule necessarily trumps the state rule in a federal forum.[7] *See id.; accord Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1167 (9th Cir.1995);

*Cutting v. Town of Allenstown,* 936 F.2d 18, 21 (1st Cir.1991); *Frechette v. Welch,* 621 F.2d 11, 13–14 (1st Cir.1980). As the Court wrote in *Hanna,* "to hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power...." 380 U.S. at 473–74, 85 S.Ct. at 1145–46. There is even less basis for charting so drastic a course where, as here, the right at issue is created under federal rather than state law.

To recapitulate, the general rule is that merely placing a complaint in the mail does not constitute filing sufficient to mark the commencement of an action in a federal court. This case falls squarely within the maw of the general rule. It follows inexorably that the appellant did not seasonably commence his suit by mailing the complaint to the clerk's office on January 7, 1990.

### C. *Miscellaneous Arguments.*

We have considered all the appellant's remaining arguments and find them to be unpersuasive. Only three of them require any comment.

▮ 1. *The Failure to Grant a Third Extension.* The district court allowed the appellant two extensions of time within which to oppose the defendants' motion for summary judgment, but balked the third time around. The appellant assigns error. We discern none.

---

7. Contrary to appellant's rodomontade, *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), does not suggest a different result. There, *in a diversity case,* the Supreme Court approved the application of Oklahoma's tolling statute, which required actual service of process, in lieu of Fed.R.Civ.P. 3. *See id.* at 742–44, 100 S.Ct. at 1980–81. The Court reasoned that the Oklahoma statute comprised a "statement of a substantive decision by that state," forming an " 'integral' part of the several policies served by the statute of limitations." *Id.* at 751–52, 100 S.Ct. at 1985–86. On this basis, the Court concluded that "[federal] Rule 3 does not replace such policy determinations," but, rather, exists "side by side" with the state statute, "each controlling its own intended sphere of

coverage without conflict." *Id.* at 752, 100 S.Ct. at 1986.

The case at bar is not analogous to *Armco Steel.* In the first place, the federal and state rules here at issue serve exactly the same purpose and, to that extent, are in direct conflict; both cannot be applied. In the second place, the Massachusetts procedural rule is simply a procedural rule; it does not implicate a substantive state policy. In the third place, the *Armco Steel* Court took special care to refrain from "address[ing] the role of Rule 3 as a tolling provision for a statute of limitations, whether set by federal law or borrowed from state law, if the cause of action is based on federal law." *Id.* at 751 n. 11, 100 S.Ct. at 1985.

The administration of filing deadlines is a matter of case management that comes within the district court's discretion. *See Mendez v. Banco Popular de P.R.,* 900 F.2d 4, 6 (1st Cir.1990); *see also* Fed. R.Civ.P. 6(b). Litigants cannot expect that courts will dance to their every tune, granting extensions on demand to suit lawyers' schedules. Given the district court's generosity in granting two extensions, and the weakness of the excuse proffered by the appellant's attorney in seeking yet another boon,[8] we see no hint of any arbitrariness in the court's exasperated denial of the third extension.[9] *See Harlow Fay, Inc. v. Federal Land Bank,* 993 F.2d 1351, 1352 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 87, 126 L.Ed.2d 55 (1993); *Mendez,* 900 F.2d at 7; *Baker v. Raulie,* 879 F.2d 1396, 1399 (6th Cir.1989); *Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565, 1569 (11th Cir.1987).

**2. *Waiver.*** The appellant asserts that, by failing to move for judgment on the limitations defense earlier in the proceedings, the defendants waived it. This assertion has no foothold in the law. The defendants raised the affirmative defense in a timeous manner by including it in their answer. *See* Fed.R.Civ.P. 8(c), 12(b)(6), 12(h)(2). They were under no obligation to do more. Once a defendant timely raises a limitations defense in his answer, the issue remains in the case until it is deleted from the pleadings or resolved by the court. *See Pessotti v. Eagle Mfg. Co.,* 946 F.2d 974, 979 (1st Cir.1991). There is no inequity in this rule; if the plaintiff desires to force an up-or-down decision on the asserted defense in the early stages of the case, he has the power to bring it to the forefront. *See* Fed.R.Civ.P. 12(c)–(d).[10] Here, the appellant could have seized the opportunity but chose not to do so. As a result, it does not lie in his mouth to complain of the defense's alleged laggardness.

**3. *Disability.*** The appellant, in what seems to be an afterthought,[11] suggests that he may have been under a disability, and, therefore, the limitation period should be tolled. On this record, the notion of any cognizable disability is pure conjecture. In any event, we have regularly held that "[i]ssues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." *Ryan v. Royal Ins. Co. of Am.,* 916 F.2d 731, 734 (1st Cir.1990).

## IV. CONCLUSION

We need go no further. Over two and one-half centuries ago, an English author called procrastination the thief of time. *See* Edward Young, *Night Thoughts* (1745). As this case proves, time, once stolen, engenders other losses as well. Because McIntosh filed his civil action a day late, we affirm the district court's entry of summary judgment in the defendants' favor.

***Affirmed.***

---

8. Counsel's statement amounts to little more than a plaint that he was suddenly called out of town on other business on the last day of the second extension period. But "most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." *Pinero Schroeder v. Federal Nat'l Mortgage Ass'n,* 574 F.2d 1117, 1118 (1st Cir.1978) (per curiam).

9. In an abundance of caution, we have examined the untimely opposition that the appellant filed after the last extension expired. Even if the opposition were fully considered, nothing contained therein would alter the outcome of this appeal.

10. Rule 12(c) provides in part that "any party may move for judgment on the pleadings." Rule 12(d) provides in part: "The defenses specifically enumerated (1)–(7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial *on application of any party....*" (emphasis supplied).

11. The appellant never advanced the argument below. Apart from its other shortcomings, the argument fails for this reason as well. *See Clauson v. Smith,* 823 F.2d 660, 666 (1st Cir.1987).