**Esther Davila RIVERA
et al., Plaintiffs,**

**v.**

**CARIBBEAN REFRESCOS
INC et al., Defendants.**

**Civil No. 02–2499(DRD).**

United States District Court,
D. Puerto Rico.

Aug. 20, 2004.

Dennis A. Simonpietri–Monefeld, Dennis A. Simonpietri Law Office, Guaynabo, PR, Juan M. Frontera–Suau, Frontera Suau Law Office, San Juan, PR, for Plaintiffs.

Jorge I. Peirats, Oreste Ricardo Ramos–Pruetzel, Pietrantoni Mendez & Alvarez, San Juan, PR, for Defendants.

## OPINION & ORDER

DOMINGUEZ, District Judge.

Plaintiffs Esther Dávila Rivera, Rafael Vélez Rivera and the conjugal partnership constituted by them filed a Complaint against Defendant Caribbean Refrescos Inc pursuant to Americans with Disabilities Act (A.D.A.), Age Discrimination in Employment Act (A.D.E.A.), Title VII of the Civil Rights Act, Family and Medical Leave Act (FMLA), Puerto Rico's Law 100, 29 L.P.R.A. § 146 et seq, Puerto Rico's Law 44, 1 L.P.R.A. § 501 et seq and Articles 1802 and 1803 for the Puerto Rico's Civil Code, 31 L.P.R.A. 5141 and 5142. Plaintiffs sustained that Defendant discriminated against Esther Dávila based on her age, sex and disability.

Pending before the Court is Defendant's *Motion for Summary Judgment* (Docket No. 30). Defendants sustain that although Esther Dávila is not considered disabled under A.D.A. they always complied with the special accommodations requested by her. Defendants further aver that plaintiffs failed to establish a discrimination prima facie case and failed to establish an adverse employment action. Plaintiffs opposed Defendants' *Motion for Summary Judgment* (Docket Nos. 38 and 39). The Court considered a *Motion for Strike* (Docket No. 41) filed by the defendants against plaintiffs' opposition for not complying with the page constraints required by the Court. Plaintiffs were ordered to re-file their opposition after proper pruning (Docket No. 52).

After defendants' *Motion for Summary Judgment* was referred to Magistrate Judge Vélez–Rivé for a report and recommendation (Docket No 54), defendants filed a *Motion for Leave to File Supplementary Motion for Summary Judgment,* and submitted their supplemental motion, memorandum and statement of uncontested facts (Docket Nos. 55, 56, 57 and 58.) The Magistrate Judge granted said request (Docket No. 59).

Plaintiffs re-filed their now twenty five page *Opposition to Defendants' Motion for Summary Judgment* (Docket No. 61) and defendants filed another *Motion to Strike* (Docket No. 63). Defendants alleged that plaintiffs failed to comply with the Court's order. Defendants sustained that to reduce the forty three page opposition to twenty five pages, with minimal editions, plaintiffs simply reduced the font and expanded the margins. The Magistrate

Judge concluded that the second opposition did not comply with the Court's order. The Magistrate concluded that the plaintiffs' second opposition was the same as the one returned by the Court "but for several paragraphs and footnotes which were removed". Further, she concluded that the new opposition "is in a minute condensed font with expanded margins making the reading of the document unbearable." Although plaintiffs alleged that the document is in Abadi Condensed Light 12 point font, the Magistrate concluded that the font is much smaller than the alleged. In sum, the Magistrate found that plaintiffs had "blatantly tried to bypass the Court's April 20, 2004 Order and the requirements of the Local Rules." Accordingly, the Magistrate granted defendants' *Motion to Strike* (Docket No. 63) and deemed the Summary Judgment unopposed.

After examining defendants' *Motion for Summary Judgment* the Magistrate Judge concluded that plaintiffs failed to establish a prima facie case as to disability and age discrimination. Accordingly, the Magistrate recommended that as to plaintiffs' claims under ADA and ADEA defendants' *Motion for Summary Judgment* be granted. Further, the Magistrate recommended that all causes of action arising from Puerto Rican Law 100, Law 44 and Articles 1802 and 1803 of the Civil Code of Puerto Rico be dismissed without prejudice. As to plaintiffs' Family and Medical Leave Act claim the Magistrate concluded that defendants did not interfere with plaintiffs medical plan. Accordingly, the Magistrate recommended that this cause of action also be dismissed. In sum, the only cause of action that survived defendants' *Motion for Summary Judgment* is

the alleged sex discrimination since defendants failed to request brevis disposition as to this claim.

Both parties filed their objections to the Magistrate's Report and Recommendation (Docket No. 65). Defendants limited their objection to the Magistrate's failure to dismiss plaintiffs' sex discrimination claim under Title VII [1] (Docket No. 66). Defendants admitted that they failed to address said claim, however, they now request that the same be dismissed with prejudice. First, they sustain that their failure responded to inadvertence since their purpose in filing their motion was the summary disposition of the whole case. Second, they contend that to the extent that the Court adopts the Magistrate findings, said conclusions would necessarily lead to the dismissal of plaintiffs' sex discrimination claim. Defendants argue that since the Magistrate concluded that the plaintiffs failed to establish that she suffered an adverse employment action and, consequently, her ADA claim should be dismissed, the same should happen with her sex discrimination claim.

On the other hand, plaintiffs filed their objections to the Magistrate's Report and Recommendation (Docket No. 67). Plaintiffs, first sustain that the Magistrate Judge abused of her discretion when she granted defendants' *Motion to Strike* and deemed defendants' *Motion for Summary Judgment* as unopposed. Second, plaintiffs allege that the Magistrate abused of her discretion when she allowed defendants to file an untimely supplemental motion for summary judgment and considered the same notwithstanding that the same in conjunction with the first motion filed by defendant surpassed the twenty five page limit.

1. Defendants sustained that inadvertently, they failed to address this claim in their *Motion for Summary Judgment.*

As to the Magistrate's conclusions on the merits, plaintiffs object to the Magistrate's conclusion that plaintiff had to affirmatively allege the specific major life activity that is substantially limited by her disability in order to be protected by ADA. Plaintiffs sustain that since she deemed the summary judgment unopposed the Magistrate failed to consider material facts that were in controversy and precluded the Court from the issuance of summary disposition.

The Court is not persuaded by plaintiffs' arguments and, for the reasons stated below, the Court accepts and adopts the Magistrate's Recommendation. Accordingly, defendants' *Motion for Summary Judgment* is GRANTED. Consequently, Plaintiffs' federal claims are DISMISSED WITH PREJUDICE. Dismissal of the local claims is WITHOUT PREJUDICE.

Plaintiff is hereby ORDERED to SHOW CAUSE as to why her sex discrimination claim should not be dismissed for failure to establish a prima facie case.

## I

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by

rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

The "written objections shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections." Local Rule 72(d). Provided that plaintiffs have objected the Magistrate's determination, the Court shall make a *de novo* determination of the Magistrate's Report and Recommendation.

## II. *Summary Judgment Standard*

Summary judgment is a procedural device designed to screen out cases that present no trial worthy issues. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995). *Plumley v. Southern Container Inc.*, 303 F.3d 364, 368–69 (1st Cir.2002). The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995).

In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material fact. *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 227–28 (1st Cir.1992). The moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). That requires supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the mov-

ant bears the burden of proof. *McIntosh v. Antonino,* 71 F.3d at 33. A fact is "material" if it potentially could affect the suit's outcome. *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. Id. Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ Once the movant has fulfilled this obligation, the burden shifts to the summary judgment target to demonstrate that a trial worthy issue exists. *Suarez v. Pueblo Int'l Inc.,* 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate,** shall be entered against the adverse party." FED. R. CIV. 56(e). *Emphasis added.* However, the First Circuit has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party. Therefore, a District Court is nonetheless "obliged to consider the motion on merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1517 (1st Cir.1991)(before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).

After reviewing defendants' *Motion for Summary Judgment* the Court finds the following factual landscape.

### III. Uncontested Facts

1. Esther Dávila Rivera, hereinafter Dávila, was born on November 17, 1952.

2. On August 12, 1974 she started working for Caribbean Refrescos Inc., hereinafter Caribbean, as a secretary in its legal department. Until the ceasing of her employment she worked as an Administrative Assistant II at the Finance Department.

3. On April 12, 1999, José Martínez, hereinafter Martínez, became manager of the Finance Department of Caribbean.

4. Dávila had back and shoulder problems. Caribbean lowered her cabinets and bought an ergonomic chair.

5. To control her allergies triggered by the opening of envelopes, Caribbean purchased an electric letter opener.

6. On or around May or June of 2000, Dávila underwent therapies to treat a condition of carpal tunnel syndrome (CTS).

7. On June 2000, her schedule was modified from 9:00 to 5:00 to 8:30 to 4:30 in order to allow her to go to her therapies and comply with her job responsibilities.

8. On or around June 2000, Dávila informed Martínez that she needed surgery. Martínez told Dávila to inform her about the date of the surgery in advance.

9. On or around the first week of December, Dávila informed Martínez that her surgery was scheduled for December 14, 2000.

10. On December 7, 2000, Dávila requested a vacation leave from December 14 to December 28, 2000. Said request was approved.

11. On December 14, 2000, Dávila underwent surgery in her hand.

12. On January 18, 2001, Dr. Angel Pérez Toro certified that Dávila had completed her rehabilitation as to her carpal tunnel syndrome and stated that she would be fit to return to work on January 22, 2001.

13. Dávila returned to the job on January 22, 2001. She submitted a CTS functional capacity form where Dr. Pérez Toro informed that from January 22 to February 12, 2001 she should only perform sedentary duties. Dr. Pérez Toro further stated that she had no limitations as to her fine and gross hand movement.

14. At her return, Dávila was instructed to digitally scan certain documents.

15. On January 24, 2001, Dávila went to Caribbean's medical dispensary to complain about an ailment. Nurse Daisy Meléndez noticed that Dávila's right hand was swollen. She informed Nurse Rosario of her finding. Dr. Canales, Caribbean's in house physician recommended Dávila to wear a hand brace at work.

16. On January 29, 2001, Dr. Canales saw Dávila in a follow up visit and noted that the swelling had disappeared.

17. On February 27, 2001, Dávila was referred to the State Insurance Fund and was placed on a short term disability leave. During her stay, Caribbean sent her all the forms required to apply for a long term disability leave. Dávila completed the forms and sent them to NATLSCO, the company that managed Caribbean's long term disability plan.

18. On November 17, 2001, Dávila's request for a long term disability was denied by NATLSCO. Caribbean was not involved in said decision.

19. Dávila was called by Zoraida Nieves who informed her that her reserve period was about to expire. Through a letter dated February 27, 2002, Dávila was informed that her year long reserve period had ended.

20. Ms. Evelyn Leal assumed the vast majority of Dávila's responsibilities.

## IV. Magistrate's Recommendation

The Magistrate Judge first addressed plaintiff's claim that she had been discriminated due to her disability. Dávila claims that she suffers from CTS, that when she returned from her surgery defendant failed to accommodate her. She claims that defendants failed to assign her to sedentary duties as recommended by her physician and, consequently, she developed a major depression. In sum, Dávila claims that her CTS in addition to the depression limited one or more life activities. After a full analysis of the A.D.A. and the jurisprudence interpreting said statute, the Magistrate concluded that Dávila did not qualify as an individual with disability warranting the protection of the ADA. The Magistrate found that Dávila did not suffer from any physical or mental impairment which substantially limited any major life activity. Since the parties did not dispute Dávila's CTS or even her depression the major issue addressed by the Magistrate was if in fact said conditions substantially limited Dávila in a major life activity. The Magistrate concluded that since Dávila failed to identify any major life activity which was substantially affected by her condition of CTS or her depression she failed to establish that she was disabled as defined by the ADA.[2] The Magistrate fur-

2. The Magistrate noted that plaintiffs raised in their second opposition to the Motion for Summary Judgment that her life activity of lifting and carrying five to ten pounds was burdened. However, said allegation was not raised in the Complaint. The Magistrate concluded that the Court should not allow plaintiff to bring new never raised allegations and

ther noted that even in their Amended Complaint plaintiffs stated that even without the reasonable accommodation Dávila was able to perform the essential functions of her position as a secretary in the Finance Department. Accordingly, the Magistrate concluded that Dávila failed to establish that due to her condition her ability to work was seriously affected. Further, the Magistrate found that Dávila only established that she had difficulty in performing one of her tasks, scanning. This fact alone, concluded the Magistrate, is not enough to support a finding that plaintiffs' condition amounts to a disability that substantially limits her capacity to work. Hence, the Magistrate found that plaintiffs failed to provide the Court with any evidence to support their allegation that Dávila should be considered as disabled under ADA. Furthermore, the Magistrate found that Dávila's condition was neither permanent nor a long term condition since her medical certificate only ordered her sedentary work for three weeks and authorized her return to work effective on January 22, 2001. Moreover, Dávila had no limitations as to her gross and fine hand movement, accordingly, her functional capacity was unaffected. Therefore, the Magistrate concluded that Dávila had no limitations as to the duties she could perform with her hands. In sum, the Magistrate found that Dávila's CTS limitation was not substantial in nature. As to Dávila's depression the Magistrate concluded that Dávila failed to establish the effect that said condition had over any major life

activity. Accordingly, the Magistrate determined that a reasonable jury, based on the evidence proffered, could not conclude that Dávila was substantially limited in a major life activity by any of the alleged conditions. Hence, she does not qualify as a disabled person, as defined by the statute, to warrant her the protection of ADA.[3]

Finally, the Magistrate Judge concluded that assuming that Dávila would have established the first prong of her prima facie case (that is, that she is an individual with disability that warrants the protection of A.D.A.) Dávila failed to establish an employment adverse action or the third prong of the prima facie case. The Magistrate concluded that Dávila knew when she went on leave that her reserve period lasted one year. Said benefits expired while waiting for a determination as to her application for long term disability benefits. The Magistrate concluded that since she knew when her benefits were to expire and she decided to wait for the decision as to her application for long term benefits without returning to her job, Dávila is responsible for letting her benefits expire without returning to her job and, as a consequence, losing her job. Accordingly, the Magistrate concluded that Dávila suffered no adverse employment action. Since Dávila does not qualify as disabled as defined by the statute and, further, she failed to establish a prima facie case, the Magistrate recommended that summary judgment as to plaintiffs' ADA claim be granted.

previously unmentioned major life activities that have been allegedly affected. The Court agrees. Further, said second opposition was stricken from the record.

3. Since she is not entitled to the protection, her accommodation claim must be dismissed. However, the Magistrate concluded that Caribbean afforded her appropriate accommodations for her condition. The Magistrate found

that at the moment that she complained of pain in her hand, the in house physician ordered her to use a hand brace, that she continued doing their job, never complained again and was able to perform her duties. As to the depression condition, the Magistrate concluded that Dávila never requested any reasonable accommodation for said condition.

■ The Magistrate then addressed plaintiffs' ADEA claim. The Magistrate noted that Dávila's age discrimination claim is based on the fact that at the time of the relevant period she was over forty years old. Accordingly, it is unquestioned that Dávila falls under the protected class. However, the Magistrate concluded that since she did not suffer an adverse employment action, she failed to establish a prima facie case and therefore her A.D.E.A. claim should be dismissed. Furthermore, the Magistrate noted that Dávila's replacement was insignificantly younger (18 months younger than plaintiff). Hence, the Magistrate found that Dávila's' replacement's age is not enough to support a prima facie case of age discrimination.[4] This conclusion was not objected by the plaintiffs. Accordingly, and in absence of plain error the Court hereby **ADOPTS** the Magistrate's conclusion. Hence, plaintiffs claim of action pursuant to ADEA is hereby **DISMISSED.**

Since Caribbean failed to request the dismissal of plaintiffs' sex discrimination claim the Magistrate did not consider it. However, the Magistrate did point out that in this case there was no adverse employment action.

As to the state law claims the Magistrate concluded that because this is not a diversity jurisdiction case the power of the federal law to hear state law claims depended on the presence of at least one substantial federal claim law suit. Since federal jurisdiction depended on the federal claims that should be dismissed, the Magistrate recommended that the state claims be dismissed without prejudice.[5]

Finally, the Magistrate addressed plaintiffs' Family Medical Act (FMLA) claim. The Magistrate first discussed defendants' claim that the action pursuant to the FMLA was time barred. The Magistrate concluded that since plaintiffs' FMLA claim was predicated on the telephone conversation Yolanda Rosario had with Dávila's husband on March 7, 2001, and the original complaint was filed on October 4, 2002 before the two year statute of limitations elapsed, the same was not time barred. The Magistrate recognized that it was not until the amended complaint where plaintiffs first asserted a FMLA claim, after the statute of limitation expired. However, since the FMLA claim arose from the same conduct, transaction or occurrence set forth on the original complaint pursuant to Rule 15(c)(2) the amendment relates back to the date of the original pleading within the two years statute of limitations.

As to plaintiffs' claims that defendant breached its obligation under FMLA when their decision to fire Dávila was based on her protected absences, the Magistrate concluded that since on February 10, 2004 the Court ruled that Caribbean provided the twelve week medical leave and afford-

---

**4.** A "prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. In the age discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger". *O'Connor v. Consolidated Coin Caterers Corp.* 517 U.S. 308, 312–313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). *Williams v. Raytheon,* 220 F.3d 16, 20 (1st Cir.2000)(age difference of three years between the terminated employee and his re-

placement was insufficient to support a prima facie presumption of age discrimination in violation of ADEA).

**5.** The Court notes that the sex discrimination claim pursuant to Title VII survived defendant's summary judgment since they failed to request the Court for brevis disposition as to this claim. Accordingly, the state law claim pursuant to Law No. 100 could still be addressed by this Court pursuant to supplemental jurisdiction.

ed forty additional weeks prior to her dismissal and Plaintiffs did not present any evidence to contradict the Court's ruling her FMLA claim based on her discharge is unwarranted. The Magistrate refrained from revisiting the issue. However, the Magistrate noted that the Court did not dismiss the claim because it determined the Amended Complaint established sufficient factual allegations from which a violation of the FMLA could be discerned., i.e. unwarranted interference with her medical coverage. (Docket No. 45). Caribbean now contends that her FMLA claim should be dismissed since she never lost her private medical coverage while employed at Caribbean. The Magistrate concluded that Dávila never lost medical coverage while employed at Caribbean nor did she lose her private medical treatment as a result of Yolanda Rosario's telephone call from March 7, 2001. At the time of this call Dávila was being treated by the State Insurance Fund.[6] Rosario's telephone call's purpose was to inform Dávila of her medical insurance policy regarding paying for expenses incurred for an illness covered by workers compensation fund since Dávila was receiving treatment from the State Insurance Fund for the same medical condition she was visiting Dr. Nuñez.[7] Rosario informed Dávila that Cigna would not cover her visits to a private physician while she was undergoing treatment at the State Insurance Fund for the same condition. Further, the Magistrate found that after her discharge from the State Insurance Fund, Dávila used her medical insurance in connection with her emotional condition. Finally, the Magistrate found that upon the expiration of Dávila's leave in February of 2002, Caribbean sent her a letter advising her of her rights under COBRA. For all the above mentioned reasons, the Magistrate concluded that as of February 2002, Dávila had medical insurance and Dávila even admitted benefitting from Caribbean's health insurance. Accordingly, the Magistrate concluded that Dávila failed to establish a claim pursuant to FMLA and recommended that the motion for summary judgment as to their claim be granted and plaintiffs' FMLA claim be dismissed. Since the plaintiffs failed to object to the Magistrate's recommendation the same is hereby **ADOPTED**. Plaintiffs' claim pursuant to FMLA is hereby **DISMISSED**.

## V. Plaintiffs' Objections and Analysis

First, plaintiffs object to the Magistrate's decision to strike Plaintiffs' Opposition and deeming the Motion for Summary Judgment as Unopposed. Plaintiffs sustain that as ordered by the Court they pruned their opposition and with the elimination of several paragraphs and footnotes they re-filed the same as a 25 page document, using a 12 point font letter as required by Local Rule 7.1(3). Plaintiffs sustain that the Magistrate Judge's recommendation if adopted will prevent them from due process of law because of a mere unsubstantiated belief that plaintiffs' opposition does not comply with the Order Setting Initial Scheduling and Case Management Conference (Docket No. 6). The Court has examined plaintiffs' opposition. However, the Court must agree with the Magistrate finding that the "minute condensed font with expanded margins mak[es] the reading of the document unbearable." Accordingly, the Magistrate's decision to strike the same is hereby

---

6. She started treatment at the State Insurance Fund on February 26, 2001 and was discharged on May 7, 2001.

7. Cigna (health insurance for Caribbean employees including Dávila) shall not cover expenses incurred by insured for an illness covered by any workers compensation or similar statute.

**ADOPTED.** Hence, in the Court's de novo review of defendant's summary judgment the same shall be considered unopposed.

■ Second, plaintiffs sustain that the Magistrate Judge erred when she allowed defendants' to file an untimely supplemental motion for summary judgment and considered defendant supplemental motion for summary judgment notwithstanding the fact that the same, in conjunction with the first one filed by defendants, would have more than the 25 page limit. The Court disagrees. When defendants filed their Motion for Summary Judgment the Court had not yet decided defendants' Motion to Dismiss as to plaintiffs' FMLA claim. For this reason, defendants failed to include the same in its request for brevis disposition. After considering defendants' request the Court denied the same. As a result, defendants' filed a supplemental motion for summary judgment. The Court considers that the Magistrate did not abuse her discretion when she allowed defendant to file the Supplemental Motion for Summary Judgment. The same consists of only seven pages and since plaintiffs' opposition to the original motion for summary judgment was already filed when

the supplemental motion was filed, plaintiffs technically had the opportunity to oppose the same.[8] The Court hereby **ADOPTS** the Magistrate decision to accept defendant's supplemental motion for summary judgment.

■ Third, plaintiffs assert that the Magistrate erred in concluding that plaintiff had to affirmatively allege in the Complaint the specific major life activity that is substantially affected by her condition. Further, plaintiffs allege that the Magistrate erroneously stated that plaintiff mentioned for the first time that she suffers from her ability to lift in the second opposition. Plaintiffs assert that the Magistrate erroneously assumed that working was the major life activity that was substantially limited. Plaintiffs sustain that the jurisprudence as to the ADA pleading standards does not require them to specifically allege which life activity is substantially limited since it is enough that the pleading notifies the defendant of the claimed impairment. Plaintiff asserts that as long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not to be specifically identified in the pleading.[9] The Court disagrees.

8. Plaintiffs already had opposed the defendant's Motion for Summary Judgment when the supplemental motion was filed. See Docket No. 38. Accordingly, plaintiff could have opposed to the supplemental motion, in a separate document. The forty three page rejected opposition could not and did not address the issue raised in the supplemental motion since the same was filed before the supplemental motion. Plaintiffs had to re-file, after proper pruning, a twenty five page opposition to defendant's first motion for summary judgment (pursuant to the Court's order issued on April 20, 2004 (Docket No. 52)) and a second opposition to defendants' supplemental motion for summary judgment. The Court did not expect plaintiffs to oppose to two motions in only one document. And in fact neither did plaintiffs since in their oppo-

sition they did not address the supplemental motion.

9. The plaintiff looks for support to her contention as to that there is no clear decision as to the need to include in the pleadings the major life activity that is substantially affected in the following cases: *Moore v. Cook County Hospital,* 1997 WL 529550 at *2 (N.D.Ill.1997) (finding "minimal allegations" in complaint sufficient to survive motion to dismiss "despite her failure to plead explicitly that the alleged disability substantially limits on one or more life activities"); *Andriacchi v. City of Chicago,* 1996 WL 685458 at *2 (N.D.Ill.1996) (upholding "completely conclusory" complaint because the conclusory statements are sufficient in a complaint as long as they put the defendant on notice of the plaintiff's

ADA is the federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *Jacques*, 96 F.3d at 510; *Katz*, 87 F.3d at 30; *Grenier*, 70 F.3d 667, 671 (1st Cir. 1995). In the employment context, the ADA prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Katz v. City Metal*, 87 F.3d at 30; *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d at 671. In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 14 (1997).

■ To establish a claim of disability discrimination under the ADA, a plaintiff must first demonstrate, that she was dis-abled within the meaning of the Act. That is **she has to establish a physical or mental impairment that substantially limits one or more of her major life activities.** Further she has to show that she has a record of such impairment or that she is being regarded as having such an impairment. *See, Bailey v. Georgia–Pacific Corporation*, 306 F.3d 1162, 1166 (1st Cir.2002); 42 U.S.C. § 12102(2); *Carroll v. Xerox*, 294 F.3d 231, 237 (1st Cir. 2002). A three-part analysis is applied when considering (a), whether the plaintiff has a physical or mental impairment that substantially limits one or more of his [her] major life activities. First, the Court must consider whether plaintiff's condition constitutes a mental or physical impairment. Second, the Court identifies the life activity upon which Plaintiff relies, and determines whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, the Court must ask whether the impairment substantially limited the major life activity. *Bragdon*, 524 U.S. at 631, 118 S.Ct. 2196; *Carroll*, 294 F.3d at 238; *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184,

claim). Plaintiffs request the Court to compare said cases with *Dikcis v. Indopco* Inc., 1997 wl 211218 at *6 (N.D.Ill.1997) (granting motion to dismiss complaint because plaintiff did not plead "that his depression 'substantially limited' one or more of his 'major life activity' " and *Fedor v. Illinois Department of Employment Security*, 955 F.Supp. 891, 893 (N.D.Ill.1996)) ("[Plaintiff] never states that this impairment substantially limits a major life activity such as working which he must do to plead disability discrimination under the [Act])." It is important to note that all these cases were addressing motions to dismiss which has a more relaxed standard than the motions for summary judgment. When addressing a motion to dismiss "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. *Calderon–Ortiz v. LaBoy - Alvarado*, 300 F.3d at 62–63 (1st Cir.2002);

quoting, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addressing a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d at 3 (citations omitted); On the other hand, when addressing a motion for summary judgment the Court must look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *McIntosh v. Antonino*, 71 F.3d at 33. The movant has to support its contention that there is no genuine issue as to a material fact by affidavits, admissions, or other materials of evidentiary quality. The plaintiff has also to support his contention that there is a genuine issue as to material fact with materials of evidentiary quality. Hence, it is easier to survive a motion to dismiss than to survive a summary judgment.

122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Lebron–Torres v. Whitehall Labs.*, 251 F.3d 236, 239–240 (1st Cir.2001).

■■ Whether a person has a disability under the ADA is an individualized inquiry, *Sutton v. United Air Lines*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) [10], and plaintiff has the burden of establishing each of the above referred elements. *Bailey*, 306 F.3d at 1167. The determination of whether an individual has a disability is based on the effect of that impairment on the life of the individual, taking into consideration that some impairments may be disabling for particular individuals but not for others. 29 C.F.R. § 1630, App. at 402; *Katz*, 87 F.3d at 32; quoting *Chandler v, City of Dallas*, 2 F.3d 1385, 1396 (5th Cir.1993) (recognizing that "the effect of a given type of impairment . . . can vary widely from individual to individual"). "Major life activities are only those that are of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. at 197, 198, 122 S.Ct. at 691. "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.*, at 198, 122 S.Ct. 681.

■ "[M]erely having an impairment does not make [an individual] disabled for purposes of the ADA." *Toyota v. Williams*, 534 U.S. at 195, 122 S.Ct. 681. In the same manner, the Supreme Court has also stated that not all physical impairments rise to the level of disability under the statute. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. at 565–566, 119 S.Ct. 2162. Further, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota v. Williams*, 534 U.S. at 198, 122 S.Ct. 681. Rather in the opposite, ADA mandates individuals "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial." *Id.*, quoting, *Albertson's, Inc. v. Kirkingburg*, 527 U.S. at 567, 119 S.Ct. 2162.

The Magistrate correctly concluded that by failing to allege which major life activity was substantially affected either by her depression or her CTS Dávila failed to establish that she qualified as an individual with disability warranting the protection of the statute. Accordingly, the Magistrate's Judge recommendation is hereby **ADOPTED.** Hence, Plaintiffs' claim pursuant to the A.D.A. is hereby **DISMISSED.**

Sex Discrimination pursuant to Title VII.

Plaintiff failed to object to the Magistrate's reiterated conclusion that even if plaintiff was a disabled individual pursuant to ADA (which she was not) or even if she had established that in fact she was substituted with a significantly younger employee in order to establish the first two prongs of the ADEA prima facie case (which she did not), plaintiffs failed to establish a prima facie case either under ADA or ADEA since they failed to establish that Dávila suffered from an adverse employment action. Title VII of the Civil Rights of 1964 makes unlawful for an employer to discriminate against an employee because of such individual's race, color, religion, sex or national origin. 42 U.S.C.

---

**10.** Considering that the ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner".

*Toyota v. Williams*, 534 U.S. at 198, 122 S.Ct. 681; *Sutton*, 527 U.S. at 483, 119 S.Ct. 2139; *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *Bragdon*, 524 U.S. at 641–642, 118 S.Ct. 2196.

§ 2000e–2(a)(1). Title VII proscribes that it is an unlawful act for an employer to discharge an individual because of such individual's sex. *See* 42 U.S.C. § 2000e–2(a)(1); *Vera–Lozano v. International Broadcasting,* 50 F.3d 67 (1st Cir.1995).

An employee who goes on paid long term disability leave and caused the cancellation of her disability benefits by an insurance provider resulting in the termination of her employment status did not suffer "adverse employment action" for purposes of prima facie case under ADEA where employee knew that she would be constructively discharge once her benefits were terminated but did not contact employer regarding her availability or desire to return to work. *Estades Negroni v. Associates Corp of North America,* 208 F.Supp 2d 144, 149 (D.Puerto Rico 2002). Similarly in *Walton v. Johnson & Johnson Services Inc.,* 203 F.Supp.2d 1312 (M.D.Fla.2002) the Court held that an employee who was terminated after her short term disability benefits expired in order to be eligible for long term disability benefits did not suffer from "adverse employment action" for purposes of Title VII retaliation claim, despite her allegations that these disability benefits deprived her of her full salary, benefits and job advancements.

### VI. Conclusion

The general principles underlying a motion for summary judgment fully apply to discrimination actions. Courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue. *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996). However, " 'even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.' " *Id.,*

*quoting Goldman v. First Nat. Bank of Boston,* 985 F.2d 1113,1116 (1st Cir.1993) *quoting Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

-plaintiffs claim of action pursuant to ADEA is hereby **DISMISSED.**

-Plaintiffs' claim pursuant to FMLA is hereby **DISMISSED.**

-the Magistrate did not abuse of her discretion when accepted accept defendant's supplemental motion for summary motion.

-the Magistrate did not abuse of her discretion when she struck from the record plaintiffs' opposition.

Plaintiff is hereby ORDERED to SHOW CAUSE as to why her sex discrimination claim should not be dismissed for failure to establish a prima facie case.

**IT IS SO ORDERED.**